327 So.2d 82 (1976)
LIBERTY MUTUAL INSURANCE COMPANY, a Corporation, Appellant,
v.
Hugh C. CURTISS et al., Appellees.
No. W-524.
District Court of Appeal of Florida, First District.
February 18, 1976.
*83 Ellis E. Neder, Jr., Jacksonville, for appellant.
C.T. Boyd, Jr., Boyd, Jenerette, Leemis & Staas, P.A., Jacksonville, for appellees.
SMITH, Judge.
Melvin, while driving a truck near the St. Mary's River in Georgia on May 17, 1972, crashed it into the rear of an automobile and injured passengers Adkins, Mobley and Robinson. Liberty Mutual, Melvin's liability insurer, paid the passengers settlements aggregating almost $34,000 and now seeks contribution from Curtiss, driver of a truck and trailer who Liberty Mutual avers was also negligent in the incident, L & S Boat Transportation Co., which employed Curtiss and owned the trailer Curtiss towed, and their insurer. The trial court entered summary judgment against Liberty Mutual on grounds, first, that at the time of the wreck Georgia law *84 required a joint tortfeasor seeking contribution to litigate with the injured party to an adverse judgment, instead of settling under threat of litigation, and, second, that Curtiss' nonliability for passenger Adkins' injury had been determined in Adkins' prior action in Florida's Fourth Judicial Circuit against Curtiss, Melvin and Liberty Mutual. In that action the court entered summary judgment for Curtiss on Adkins' claim, whereupon Melvin and Liberty Mutual paid Adkins a settlement. Liberty Mutual appeals from the judgment excusing appellees from contribution.
The parties agree that Georgia law determines whether and on what terms a right of contribution arose in Liberty Mutual's favor. Annot., 95 A.L.R.2d 1096, 1102 (1964). We find that the Georgia legislature's 1972 act amending § 105-2012, Ga.Code, became effective by its terms when the Governor approved it on March 7, 1972, rather than, as the trial court apparently held, on July 1, 1972. Previously, the rule of Hangar Cab Co., Inc. v. City of Atlanta, 122 Ga. App. 661, 178 S.E.2d 292, 293 (1970), disapproved on other grounds, McMichael v. Georgia Power Co., 133 Ga. App. 593, 211 S.E.2d 632 (1974), applied:
"... no right of contribution exists in favor of one tort-feasor against another, when the first had made settlement with one having a claim for damages against both."
Now, the Georgia act provides:
"Without the necessity of being charged by suit or judgment, the right of contribution from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement... ."
That Liberty Mutual settled the passengers' claims short of judgment did not therefore, affect its right under Georgia law to contribution.
Although the passengers' causes of action and Liberty Mutual's contribution claim were both created by Georgia law, the effect on the contribution claim of the Florida judgment exonerating Curtiss of liability to Adkins is to be determined by Florida law. Restatement (Second) of Conflicts §§ 94, 95 (1971). There apparently is no Florida decision directly addressing the issue, and there is no contention here that Florida's new Contribution Among Tortfeasors Act, ch. 75-108, Fla. Laws, is directly applicable.[1]
The question is typically approached as one of res judicata, concerning which there is ample Florida precedent that the determination of an issue in prior litigation is not conclusive against persons who were not parties personally or by privies. See, e.g., Seaboard Coast Line R.R. Co. v. Industrial Contr. Co., 260 So.2d 860 (Fla. App. 4th, 1972). Those who have undertaken to answer the present contribution question strictly in terms of res judicata have generally held that a prior judgment exonerating one of two codefendants does not foreclose the liable defendant from claiming contribution if he and the codefendant did not litigate as adversaries the *85 issue of the codefendant's liability. Restatement of Judgments § 106, comment c (1942); 18 Am.Jur.2d Contribution § 63 (1965); Annots., 101 A.L.R. 104 (1936), 142 A.L.R. 727 (1943). See also 50 C.J.S. Judgments § 819 (1947).
In disposing of Liberty Mutual's claim against Curtiss and his insuror for contribution on account of Liberty Mutual's $2,000 payment to Robinson and its $4,200 payment to Mobley, the authorities above cited are most persuasive. The liability of Melvin, Liberty Mutual, Curtiss and L & S to Robinson and Mobley was not directly litigated in or decided by the judgment in Adkins' case, and in the absence of adversarial litigation between the codefendants on the issue of their respective responsibilities for the wreck, Liberty Mutual's inchoate contribution claim on account of subsequent payments to Robinson and Mobley survived the judgment for Curtiss on Adkins' claim. The judgment below must therefore be reversed to the extent it foreclosed the contribution claim on account of those payments.
In our view, however, the question of Liberty Mutual's entitlement to contribution from Curtiss on account of its $27,686 payment to Adkins is more appropriately answered in terms of the unique nature of the right of contribution among tortfeasors. That right is a consequence of the claimant having discharged a common liability shared by the tortfeasor from whom contribution is claimed. As stated by our Supreme Court in Lincenberg v. Issen, 318 So.2d 386, 390 (Fla. 1975), simple justice seems to require contribution by an obligor who is discharged of an obligation shared with but paid entirely or disproportionately by another. 1 Harper & James, Law of Torts § 10.2 at 718 (1956); Prosser, Law of Torts § 50 at 307, 309 (14th ed. 1971); 18 Am.Jur.2d Contribution § 33 (1965); 12 Uniform Laws Annotated, prefatory notes to Uniform Contribution Among Tortfeasors Act at 59, 60 (Master ed. 1975). The Georgia act, whose general terms left many interstices for judicial bridging, has been interpreted by the Georgia Court of Appeals consistently with the same underlying principle. That court held, for example, that contribution cannot be required of a tortfeasor who, by reason of immunity of marriage or of workmen's compensation legislation, is not liable to the injured plaintiff. Southern Ry. Co. v. Brewer, 122 Ga. App. 292, 176 S.E.2d 665 (1970); Central of Ga. Ry. Co. v. Lester, 118 Ga. App. 794, 165 S.E.2d 587 (1969). When there is such an immunity, it may be said that the contribution claimant who paid the injured party did not thereby discharge a common obligation shared by the injured party's negligent spouse or employer. See also Baltimore Transit Co. v. Maryland, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460 (1955); Prosser, supra at 309, n. 75.
The necessary predicate, therefore, of Liberty Mutual's claim against Curtiss on account of having paid Adkins is that, by paying Adkins, Liberty Mutual discharged a common liability to Adkins shared by Curtiss. Liberty Mutual cannot assert that or, asserting, cannot prove it. Curtiss was exonerated of liability to Adkins by the judgment of a competent court. Liberty Mutual can no more plausibly contend that Curtiss is or was liable to Adkins than Curtiss could urge, if Liberty Mutual's payment to Adkins had resulted from a judgment of the same court, that Liberty Mutual was not liable. It is not a question of whether good judicial administration requires that all potential claims be resolved in a single action by the affected parties. With deference to other decisions troubled in this context by res judicata doctrines [e.g., Miraglia v. Miraglia, 106 N.J. Super. 266, 255 A.2d 762 (1969)], neither do we think the issue is whether Liberty Mutual has had its day in court on the issue of Curtiss' liability. It is simpler than that. That Curtiss shared no common liability with Liberty *86 Mutual to Adkins is, like the weather, only a fact; but it is a fact, also like the weather, which Liberty Mutual cannot change by litigation.
Although Florida's own Contribution Among Tortfeasors Act, ch. 75-108, is not directly applicable in this case, supra, n. 1, we believe the result reached here is entirely consistent with the Act. For it, too, is predicated on the basic principle emphasized here and in Lincenberg v. Issen. A contribution claim may be made under the Act only by "a tortfeasor who has paid more than his pro rata share of the common liability" and one who pays pursuant to settlement has no right of contribution "from another tortfeasor whose liability ... is not extinguished by the settlement. ..." Ch. 75-108, § 1(2)(b), (d) (emphasis added). Under § 1(4)(b), enforcement of the right of contribution by one "judgment defendant" against another is "by motion upon notice to all parties to the action." Plainly, the Act does not contemplate that, in the absence of cross-claims fought out in the main action, the "judgment defendants" are free to deny liability to each other for contribution. Further, the Act forecloses by both necessary implication and specific provision all potential contribution claims by a judgment defendant against codefendants who are exonerated by the judgment. That result is not made to depend upon cross-claims, adversarial positions or other indicators of res judicata:
"The judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution." Sec. 1(4)(f).
Finally, § 1(5)(b) provides that the good faith release of a tortfeasor discharges him "from all liability for contribution to any other tortfeasor," thus foreclosing any contention that a released tortfeasor could thereafter be discharged of a common liability by another's payment.
The view we take of the matter is that which the Supreme Court of Minnesota intimated in 1934, adopted in 1942, limited in 1952, questioned once and reaffirmed twice in 1953 and questioned again in 1964. Hardware Mut. Cas. Co. v. Anderson, 191 Minn. 158, 162-63, 253 N.W. 374, 376 (1934) (dictum); American Motorists Ins. Co. v. Vigen, 213 Minn. 120, 5 N.W.2d 397, 142 A.L.R. 722 (1942); Bunge v. Yager, 236 Minn. 245, 52 N.W.2d 446 (1952); Bocchi v. Karnstedt, 238 Minn. 257, 56 N.W.2d 628 (1953); American Auto. Ins. Co. v. Molling, 239 Minn. 74, 57 N.W.2d 847 (1953); Muggenburg v. Leighton, 240 Minn. 21, 60 N.W.2d 9 (1953); Anderson v. Gabrielson, 267 Minn. 176, 126 N.W.2d 239 (1964). In applying the Vigen rule, we recognize that it has been criticized for foreclosing the trial of an issue which was not litigated by the parties to the contribution controversy. Note, 37 Minn.L.Rev. 470, 478-79 (1953). It is also true that the Minnesota rule has little currency elsewhere. Annot., 24 A.L.R.3d 318, 376 (1969). But see 1 Freeman, Judgments § 425 at 922-23 (5th ed. 1925); Livesay Ind., Inc. v. Livesay Window Co., 202 F.2d 378, 382 (5th Cir.1953). The Minnesota Court admits to having had "no little difficulty" deciding cases in terms of the Vigen rule. Radmacher v. Cardinal, 264 Minn. 72, 75, 117 N.W.2d 738, 741 (1962). But a doctrine hardy enough to survive forty Minnesota winters of criticism at home, ostracism elsewhere and discontent within the court which gave it birth must have substantial intrinsic virtues.
Those virtues, we think, are evident. If to speak of rights and liabilities under law is finally but a prediction that the sovereign will dispose of competing interests in a certain way, it is hardly possible to speak any longer of X discharging a common liability of X and Y to Z when the sovereign has said that Y is not and never was liable to Z. And when a judgment has discharged *87 Y of potential liability to Z, it is nonsense for X to say that, by paying Z, he has conferred on Y the benefit of nonliability to Z.[2] No policy of Florida law requires that the congested judicial system offer X an opportunity to prove something which is not a fact and which cannot, by any skill of advocacy, be made a fact.
The lessons of the Minnesota experience may prove useful as subsequent cases require us to interpret and apply the Florida Contribution Among Tortfeasors Act. If, as is apparent, both the Vigen rule and § 1(4)(f) of the Florida Act foreclose a contribution claim by a defendant held liable to the plaintiff against a codefendant exonerated in the same action, it is pertinent that Minnesota has recognized the judgment defendant as a party aggrieved by the codefendant's exoneration, and so entitled to appeal, notwithstanding the absence of cross-claims. Bocchi v. Karnstedt, supra. See also Muggenburg v. Leighton, supra, 60 N.W.2d at 10, n. 1, suggesting that the judgment defendant could appeal even in the absence of the Vigen rule, because the codefendant's exoneration would deprive the judgment defendant of the benefits of a Minnesota statute providing, in the main action, a summary means of recovering contribution against other judgment defendants. Compare ch. 75-108, § 1(4)(b), Fla.Laws. A judgment against one defendant and in favor of a codefendant on an injured plaintiff's claim was held, notwithstanding the Vigen rule, not to bar a subsequent action by the judgment defendant against the former codefendant for damages other than those of contribution. Bunge v. Yager, supra. The Minnesota court seems to have assumed with some dismay, but has not yet directly decided, that under the Vigen rule a judgment for an alleged tortfeasor, rendered in an action by the injured person against him alone, forecloses a subsequent contribution claim by a tortfeasor whom the injured plaintiff pursued later, separately and successfully. Anderson v. Gabrielson, 267 Minn. 176, 126 N.W.2d 239, 242, n. 9. In Florida, the reverse implications of § 1(4)(f) will no doubt bear on that issue.
Our disposition of Liberty Mutual's claim against Curtiss and his insurer suffices for L & S also. Although L & S was not a party to the Adkins case, Liberty Mutual's complaint for contribution asserts only that L & S was liable to Adkins and is now liable to Liberty Mutual because its servant Curtiss was liable to Adkins. That, as we have seen, cannot be. The case for contribution on account of the Robinson and Mobley payments may proceed against L & S for the same reason it may proceed against Curtiss and his insuror.
Affirmed in part, reversed in part.
RAWLS, J., concurs.
BOYER, C.J., concurs specially.
BOYER, Chief Judge (concurring specially).
I concur in the decision and conclusion reached.
NOTES
[1] The Contribution Act provides that it shall take effect on becoming law and apply to "all causes of action pending at the time of its passage" involving rights of contribution "and to cases thereafter filed." Although the parties did not raise the question and we do not decide it, we have considered whether authorities such as Goodfriend v. Druck, 289 So.2d 710 (Fla. 1974), require us to apply the Florida Act to this case because the Act is now effective. Irrespective, however, of whether Liberty Mutual's "cause of action" for contribution persisted at the time of the "passage" of the Contribution Act, notwithstanding the prior existence of the adverse judgment here appealed, it would appear that the pertinent "cause of action" for purposes of § 1(4)(f) of the Act, which if applicable would foreclose Liberty Mutual, was Adkins', not Liberty Mutual's. It was the prior judgment against Adkins, not that against Liberty Mutual, which determined the nonliability of Curtiss. Adkins' cause of action ceased to be "pending" long before the passage of the Act.
[2] See Reserve Ins. Co. v. Village of Big Lake, ___ Minn. ___, 230 N.W.2d 47, 50 (1975), where, in another context, the court stated:

"The equitable principle which undergirds contribution is that the party who seeks payment has conferred an advantage or benefit on the party from whom payment is sought. Where, as here, no benefit has been conferred, there is no entitlement to contribution."