363 So.2d 2 (1978)
Nadio and Livio CHRISTIANI and Reserve Insurance Co., Appellants,
v.
John POPOVICH et al., Appellees.
GOODINGS MILLION DOLLAR MIDWAY and Reserve Insurance Co., Appellants,
v.
John POPOVICH et al., Appellees.
Nos. X-265, Z-113, X-266 and Z-112.
District Court of Appeal of Florida, First District.
August 10, 1978.
Rehearing Denied October 27, 1978.
*4 Harry E. Barr and Charles Timmel of Timmel, Campbell & Barr, Fort Walton Beach, for appellants.
Roderic G. Magie of Levin, Warfield, Middlebrooks, Mabie, Rosenbloum & Magie, P.A., Pensacola, for appellees Pensacola Interstate Fair, Inc. and United States Fidelity & Guaranty Co.
G. Miles Davis of Beggs & Lane, Pensacola, for appellee Gulf Power Co.
SMITH, Judge.
John Popovich, a fairground concessionaire, sued appellants Nadio and Livio Christiani, Goodings Million Dollar Midway, Inc. ("Midway") and their insurer, as well as appellees Pensacola Interstate Fair, Inc. ("Fair"), its insurer, and Gulf Power Company for the wrongful death of Popovich's wife, Simone. She was electrocuted when power from Gulf Power's overhead highvoltage line arced to the nearby Pirate's Den, an amusement owned and built by the Christiani defendants, and thence to the Popovich trailer. Those structures were on property owned by defendant Fair, for whom defendant Midway provided and managed fair amusements and concessions, including the Christianis' Pirate's Den. Popovich alleged negligence by Midway and the Christiani defendants in placing the tall Pirate's Den dangerously near the power line; negligence by the landowner, Fair, in permitting that to be done; and negligence by Gulf Power in maintaining and operating its power line.
The pleadings were settled and the case was tried before June 12, 1975, when the Uniform Contribution Among Tortfeasors Act took effect.[1] Chapter 75-108, Laws of Florida (1975), as amended, Section 768.31, Florida Statutes (1977). Certain of the defendants cross-claimed for indemnity against one another, each conceiving that its potential liability to plaintiff Popovich was for passive negligence only, and that the others were actively negligent. In November 1974 the court granted defendant Fair a summary judgment, finding no liability; and from that judgment timely appeals were taken by plaintiff Popovich (No. X-76) and by the indemnity cross-claimants, the Christianis and Midway (Nos. X-265 and X-266). At the December 1974 trial of plaintiff's claim against defendants the Christianis, Midway, and Gulf Power, the court directed a verdict on liability for defendant Gulf Power. The jury returned a substantial verdict for plaintiff against defendants the Christianis and Midway. On June 18, 1975, judgment was entered for plaintiff against them and for defendant Gulf Power against all parties. The Christianis and Midway appealed from the judgment against them (Nos. Z-112 and Z-113) and plaintiff Popovich appealed from the judgment exonerating Gulf Power (No. Z-120).
While these appeals were pending, the judgment debtors satisfied plaintiff's judgment and obtained from him a purported assignment of the right to prosecute his appeals in Nos. X-76 and Z-120. On motion by appellees Fair and Gulf Power, showing that plaintiff's judgment had been satisfied, we held the assignment for naught and dismissed plaintiff's appeals which the Christianis and Midway had sought to carry on in their own right.[2]
*5 Before us now are the consolidated appeals by the Christianis and Midway from the final summary judgment entered for defendant Fair and from the judgment entered on the directed verdict for defendant Gulf Power. Those appeals present the following issues:
First, whether the Contribution Among Tortfeasors Act, Section 768.31, is applicable although it was not effective until June 12, 1975, several months after the summary judgment for Fair and after the trial which resulted, on June 18, 1975, in the entry of judgment for Gulf Power and for plaintiff against the remaining defendants. We hold that the Contribution Act is applicable.
Second, whether the judgment defendants, the Christianis and Midway, may by appeals complain of asserted error in the judgments which exonerated codefendants Fair and Gulf Power of liability to plaintiff. We hold that they may.
And third, whether there was error in the summary judgment for Fair and the directed verdict for Gulf Power. We hold that Fair did not demonstrate its nonliability to plaintiff by motion for summary judgment and that, on the evidence at trial, a jury might have found Gulf Power actionably negligent. Consequently, though the errors are harmless to plaintiff, who accepted full satisfaction of his judgment from appellants Midway and the Christianis, we reverse the judgments exonerating Fair and Gulf Power and remand for further proceedings against them on appellants' claims for contribution.

I.
The Contribution Among Joint Tort-feasors Act is by its terms applicable "to all causes of action pending on June 12, 1975, wherein the rights of contribution among joint tortfeasors are involved and to cases thereafter filed." Section 768.31(7), Florida Statutes (1977). As stated above, the summary final judgment for Fair was entered November 21, 1974, and the judgment for Gulf Power and for plaintiff against appellants was entered June 18, 1975, after a December 1974 trial and verdict.
Because the litigation affecting the responsibilities between appellants and Gulf Power was pending in the trial court and the appeals affecting appellants' claims against Fair were pending here when the Contribution Act became effective June 12, 1975, the Act is applicable to these appeals notwithstanding that contribution issues were not pleaded or otherwise raised when the case was pending before trial. Rader v. Variety Children's Hospital, 323 So.2d 564 (Fla. 1975), conformed to, 328 So.2d 506 (Fla. 3d DCA 1976), and 328 So.2d 507 (Fla. 3d DCA 1976); Warn Industries v. Geist, 343 So.2d 44 (Fla. 3d DCA 1977), cert. denied, 353 So.2d 680 (Fla. 1977). See also Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975); Shealy v. Clark Constr. Co. of Ocala, Inc., 323 So.2d 11 (Fla. 1st DCA 1975).
Section 768.31(7) applies the Contribution Act to all "pending" cases in which the rights of contribution among the joint tortfeasors are "involved." The quoted language does not mean that the Act applies only when contribution rights were "involved" in the sense of having been raised by pleadings prior to June 12, 1975. But cf. Warn Industries v. Geist, 343 So.2d at 47, (noting that the contribution claimant had made a motion requesting accelerated application of the Act, denied by trial court order on May 15, 1975). To so hold would attribute determinative effect to pleadings which had no basis in the law before the Contribution Act was effective. It is sufficient that this case was pending on the critical date and that inchoate contribution rights were "involved" in the sense of being affected by the outcome. This is not a case comparable to Linder v. Combustion Engineering, Inc., 342 So.2d 474, 476 (Fla. 1977), in which the Supreme Court prescribed particular timetables for application of a change in the common law. This case is governed instead by the familiar rule, as stated in Linder, 342 So.2d at 475, that;
In the absence of such a determination [of prospective application], the doctrine [of "strict liability"] would be applied at the appellate level even though the question *6 was not raised before the trial judge. We have held that on appellate review the issues must be resolved in accordance with the case law in effect at the time the appellate decision is rendered.
The only pleaded issues between the defendants in the trial court were issues of indemnity, which we do not confuse with contribution. See, e.g., Home Indemnity Co. v. Edwards, 360 So.2d 1112 (Fla. 1st DCA 1978). Appellants have not urged that there was error in the trial court's rulings insofar as they dismissed appellants' indemnity claims. Yet application of Section 768.31 requires consideration of whether appellants' inchoate contribution claims were extinguished by the judgments now properly before us by timely appeals, and whether appellants may here and now complain of that effect.

II.
As long as Florida law refused its process to enforce contribution among joint tortfeasors, a defendant adjudged liable to an injured party was held not aggrieved by the same judgment's exoneration of a codefendant. Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940); Jackson v. Florida Weathermakers, Inc., 55 So.2d 575 (Fla. 1951). Denying appellate remedies to the judgment defendant, as against the exonerated codefendant, was consistent with the view that a judgment defendant is both immediately and ultimately responsible to satisfy plaintiff's judgment fully, and it is of no legitimate interest to him that a codefendant may have been improperly exonerated.
In the only reported decision we have found directly addressing the issue since Section 768.31 became effective, the District Court of Appeal, Third District, held that the contribution statute does not change prior law in this respect; and that a judgment defendant may not appeal and assign error in the judgment's exoneration of a codefendant. North Shore Hospital v. Martin, 344 So.2d 256 (Fla. 3d DCA 1977), cert. denied, 353 So.2d 677 (Fla. 1977). As North Shore noted, we suggested a contrary result by dicta in Liberty Mutual Ins. Co. v. Curtiss, 327 So.2d 82 (Fla. 1st DCA 1976), app. dism., 341 So.2d 291 (Fla. 1976). For reasons there stated, and not repeated here, we suggested that a judgment defendant is demonstrably aggrieved by the exoneration of a codefendant, and we approvingly cited Minnesota decisions at common law allowing a judgment defendant to complain on appeal of the exoneration of a codefendant. E.g., Bocchi v. Karnstedt, 238 Minn. 257, 56 N.W.2d 628 (1953). We now hold that a right to appeal is a necessary consequence of Florida's Contribution Act, which destroys the judgment defendant's inchoate contribution rights  rights which may mature on payment of the judgment  against an exonerated codefendant. Section 768.31(4)(f) provides:
The judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their rights to contribution.
Our disagreement with North Store stems from recognition that, whether inchoate contribution claims are conventionally pleaded or not, Section 768.31(4)(f) renders a judgment for plaintiff against some but not all defendants binding on all defendants for contribution purposes. Liberty Mutual suggested by dicta that, irrespective of conventional res judicata criteria, a judgment exonerating an alleged tortfeasor of liability to plaintiff may even foreclose the inchoate contribution claim of a tortfeasor absent from that litigation, who is later sued separately and successfully by plaintiff. Florida's Act benefits a contribution claimant only when he has discharged a common liability shared in by another tortfeasor;[3] *7 and there is great difficulty in supposing that an alleged joint tortfeasor, previously exonerated by a judgment, is discharged of liability by satisfaction of a later judgment against the contribution claimant. We need not here decide that issue or further discuss it except to point out again, as we did in Liberty Mutual, 327 So.2d at 87, that Section 768.31(4)(f) may require a different result from that in Anderson v. Gabrielson, 267 Minn. 176, 180, 126 N.W.2d 239, 242, n. 9 (1964). The Florida Act, by explicitly binding codefendants to the consequences of a judgment, may imply that absent tort-feasors are not so bound.
The issue here is simpler. We are concerned with the direct effect, not with the reverse implications, of Section 768.31(4)(f). Unless the right to appeal an adverse judgment is to be denied defendants as a disfavored class, there are but two choices in fixing the effect of a judgment exonerating one defendant and holding another liable to plaintiff. Either the judgment must be held ineffectual to establish the contribution responsibilities between the defendants, so that they are free to litigate those issues later; or the judgment defendant must be allowed an appeal to test the correctness of the adjudication by which he lost his contribution claim against the exonerated defendant. Section 768.31(4)(f) forecloses the first choice. We therefore adopt the second.
Even the most primitive notions of due process and equal protection of the law forbid denying judgment defendants as a class the right to appeal from judgments which adversely determine their substantial rights against exonerated codefendants. The only conceivable basis for such discriminatory treatment would be a lingering conviction that the law should deny its benefits to tortfeasors. See the analysis in Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, 53 A.L.R.3d 175 (1972), cited and quoted approvingly in Lincenberg, supra, 318 So.2d at 389-90. That harsh and inequitable notion has been repudiated both at common law, see Lincenberg, and by the Contribution Act. If there were any doubt that judgment defendants in tort cases have now been welcomed into full citizenship, it is dispelled by realization that the ancient rule discriminated against tort-feasors, not against defendants as such. Florida's comparative negligence rule renders every party, plaintiff and defendant alike, a tortfeasor to the extent his fault contributed to the shared injury. Counterclaims against plaintiffs are now commonplace; and, in multi-party actions involving round-robin claims, counterclaims and cross-claims, it would be odd indeed to grant certain parties appeals on issues affecting contribution, while denying such appeals to others, because of party designations in the trial court. It would be stranger still to hold that a plaintiff may prosecute an appeal from a judgment exonerating one of several defendants on his claim, but that he cannot complain on the same ground of the same judgment which held plaintiff, but not the exonerated defendant, liable to another defendant who counterclaimed and crossclaimed against both as joint tort-feasors.
North Shore, reaching a different conclusion, cited to decisions in Missouri, California, and New York, particularly May v. Bradford, 369 S.W.2d 225 (Mo. 1963), Guy F. Atkinson Co. v. Consani, 223 Cal. App.2d 342, 35 Cal. Rptr. 750 (1964), and Baidach v. Togut, 7 N.Y.2d 128, 196 N.Y.S.2d 67, 164 N.E.2d 373 (1959).
We think there are significant differences between Florida's Contribution Act and the corresponding statutes of Missouri, California, and New York on which those decisions were based. In May, plaintiff was held to have voluntarily dismissed his claim at trial against the appellee defendant, so there was no judgment for the appellee defendant which might have aggrieved the appealing judgment defendant. More important, May interpreted the Missouri statute as requiring, as a condition to the creation of inchoate contribution rights, a joint *8 judgment against two or more defendants.[4] The California[5] and New York[6] statutes applicable in Consani and Baidach also required a joint judgment. Our so distinguishing those statutes and decisions may beg the question we address here, because a judgment defendant in Missouri, California or New York could reasonably contend he was aggrieved by the trial court's refusal to enter the necessary "joint judgment" against the codefendant and himself. It appears, however, that the courts in those jurisdictions did not deny appeals to those judgment defendants because they were not "aggrieved" in fact. Rather, those courts were concerned with construing a statute narrowly derogating prior common law, and they simply recognized that their legislatures had strictly limited contribution to cases resulting in a "joint judgment" against defendants.
The Florida Contribution Act does not require a joint judgment against tort-feasors as a precedent condition to contribution rights. In Florida, joint liability is sufficient, as it now is by statute amendment in New York.[7] In Florida, therefore, there is no statutory impediment to the judgment defendant contending on timely appeal that the judgment wrongfully terminated liability on the part of the exonerated codefendant. We have found no New York decision now authorizing a judgment defendant to appeal from the exoneration of a codefendant, but New York practice now includes the potential for such relief. Lincoln v. Austic, 60 A.D.2d 487, 401 N.Y.S.2d 1020, 1021 (1978), not involving contribution issues, permitted appeal by a defendant who was exonerated by a special verdict finding that the alleged tortfeasor drove appellant's automobile with his consent but that the driver was not negligent. Another action was then pending against appellant, arising from the same incident. The court, foreseeing the possibility of collateral estoppel against appellant on the consent issue, held appellant aggrieved by and entitled to review of that finding in the judgment which exonerated him:
When ... a specific finding at trial might prejudice a party in a future proceeding by way of collateral estoppel (see e.g., Israel v. Wood Dolson Co., Inc., 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97), it seems clear that a substantial and important right of said party has been adversely affected and that the interests of justice require that said party be permitted to appeal the adverse finding... .
The most important distinction between Florida's Contribution Act and the statutes in effect when North Shore's Missouri, California, and New York decisions were rendered is that none of those statutes contained a specific provision, as does Florida's, rendering a judgment on plaintiff's claim against multiple defendants "binding as among such defendants in determining their right to contribution." Section 768.31(4)(f), Florida Statutes (1977). That is a distinctive feature of the Uniform Act from which Florida's was taken. Uniform Contribution Among Tortfeasors Act § 3(f) (1955 revision).
*9 In states subscribing to this provision of the Uniform Act, courts have held that a judgment defendant may appeal from a judgment exonerating a codefendant. E.H. Koester Bakery Co. v. Poller, 187 Md. 324, 50 A.2d 234 (1946); Marr v. Nagel, 58 N.M. 479, 272 P.2d 681 (1954); Arkansas Louisiana Gas Co. v. Stracener, 239 Ark. 1001, 395 S.W.2d 745 (1965); Ettin v. Ava Truck Leasing, Inc., 100 N.J. Super. 515, 242 A.2d 663 (1968), modified 53 N.J. 463, 251 A.2d 278 (1969). As the North Shore Court noted, Minnesota and West Virginia have the same rule although they do not subscribe to the Uniform Act. Hutcherson v. Slate, 105 W. Va. 184, 142 S.E. 444 (1928); Bocchi v. Karnstedt, supra. These cases reject the idea that a defendant loses nothing by a judgment in favor of a codefendant. In Marr, the New Mexico trial court granted a judgment for one defendant notwithstanding the verdict against him. The judgment defendant appealed. The New Mexico Supreme Court held Nagel "certainly became an aggrieved party at least to the extent that the trial court in discharging the co-defendant and joint tortfeasor ... thereby deprived him, Nagel, of a possible right of contribution from the co-defendant Cohn." 58 N.M. at 485, 272 P.2d at 685.
In states which have adopted the Uniform Act, a defendant may cross-claim or file a third party complaint for contribution, thus raising issues on which to predicate an appeal from an adverse judgment. E.g., Ark.Stat.Ann. § 34-1007 (1962); Del. Code tit. 10, § 6306 (1975). Haw. Rev. Stat. § 663-17 (1976); Overton v. Tarkington, 249 N.C. 340, 106 S.E.2d 717 (1959); Markey v. Skog, 129 N.J. Super. 192, 322 A.2d 513 (1974); Board of Ed. v. Standhardt, 80 N.M. 543, 458 P.2d 795 (1969); Falciani v. Philadelphia Transp. Co., 189 F. Supp. 203 (E.D. Pa. 1960); New Amsterdam Cas. Co. v. Holmes, 435 F.2d 1232 (1st Cir.1970) (R.I.). New York now also allows cross-claims and third party claims for contribution. Kelly v. Long Island Light Co., 31 N.Y.2d 25, 334 N.Y.S.2d 851, 286 N.E.2d 241 (1972). California does not, because contribution issues are not recognized as justiciable until a judgment defendant has paid more than his share of a joint judgment. General Electric Co. v. State ex rel. Dep't of Public Works, 32 Cal. App.3d 918, 108 Cal. Rptr. 543 (1973); Thornton v. Luce, 209 Cal. App.2d 542, 26 Cal. Rptr. 393 (1962). Consistently with the decisions in states employing the Uniform Act, and in contrast to California, Florida appellate courts have held third party claims for contribution allowable prior to entry of a plaintiff's judgment and have reversed dismissals of those claims. Lindsey v. Austin, 336 So.2d 486 (Fla. 3d DCA 1976); First Church of Christ Scientist v. City of St. Petersburg, 344 So.2d 1302 (Fla. 2d DCA 1977); Florida Power Corp. v. Taylor, 332 So.2d 687 (Fla. 2d DCA 1976); Leesburg Hospital Ass'n, Inc. v. Carter, 321 So.2d 433 (Fla. 2d DCA 1975); Steak Enterprises, Inc. v. Claus, 345 So.2d 1075 (Fla. 4th DCA 1976).
The North Shore court gave some but apparently not controlling emphasis to the fact that the appealing judgment defendants did not cross-claim for contribution against the appellee defendant whom the judgment exonerated.[8] We think the absence of a cross-claim is not determinative of the conclusive effect of a judgment exonerating a codefendant or of the judgment defendant's right to appeal. The Florida Act makes the judgment conclusive on contribution issues irrespective of the presence or absence of cross-claims, Section 768.31(4)(f), and provides for enforcement of contribution rights between judgment defendants "by motion upon notice to all parties to the action." Section 768.31(4)(b). If as North Shore suggests inchoate contribution claims are not justiciable by appeal until "liability has been established" by a judgment, or until one codefendant has paid more than his pro rata share of the common liability, 344 So.2d at 258, it would seem that such inchoate claims are equally unjusticiable *10 at trial, and that cross-claims are inappropriate before judgment. We hold that cross-claims are not inappropriate, but also that they are not essential to the entry of a conclusive appealable judgment.
Appellants Midway and the Christianis are therefore entitled to appeal from the judgments which indebted them to plaintiff and exonerated Fair and Gulf Power. Their inchoate contribution claims were justiciable on appeal as a result of the judgments entered, and they are not made more so because appellants satisfied the Popovich judgment in July 1975. Payment of the judgment made appellants' contribution claims fully mature and enforceable, if found to be meritorious, but payment was unnecessary to perfect the appeal.
We recognize that our decision, if correct, impacts trial strategies in the defense of multi-party tort cases. Codefendants must simultaneously attempt to deny liability to plaintiff and shift responsibility to each other. If in particular cases the trial court should consider it orderly or otherwise desirable to minimize the resulting conflict within the common defense of codefendants, a separate and subsequent trial on the degrees of negligence by the responsible defendants is possible. But plaintiff's verdict and judgment will identify the responsible defendants who remain to litigate their degrees of responsibility; and any judgment defendant aggrieved by that judgment's exoneration of another must timely appeal if his inchoate contribution claim is to be preserved.

III.
On the issues affecting appellants' contribution rights, we find that the trial court erred in directing a verdict for Gulf Power. Although the evidence was conflicting, a jury could have found that Gulf Power negligently overrode a circuit breaker and contributed to the fatal incident. The court also erred in granting summary judgment to Fair. The evidence showed that Fair had control over the placement of rides and structures in the midway. Whether Fair negligently allowed the Christianis to place their ride too close to the power line is an issue of fact which cannot be determined by summary judgment.
The judgments for Fair and Gulf Power are REVERSED and the cause is REMANDED for further proceedings on appellants' contribution claims.
McCORD, C.J., and MELVIN, J., concur.
NOTES
[1] The Act took effect upon becoming law on June 13, 1975, but it was made applicable to cases pending "at the time of its passage." Although "passage" of the committee substitute for S.B. 98 occurred in the House on May 28, Fla.H.R.Jour. 442 (1975), and in the Senate on May 30, Fla.S.Jour. 1018 (1975), Florida Statutes (1975) translated "passage" as June 12, 1975, the date the bill was signed by the Governor. Section 768.31(7).
[2] The satisfaction of a judgment against one alleged joint tortfeasor terminates claimant's cause of action against another. E.g., Walker v. U-Haul Co., Inc., 300 So.2d 289 (Fla. 4th DCA 1974), cert. denied, 314 So.2d 588 (Fla. 1975).
[3] Section 768.31(2)(b) provides: "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability... ." The same theme is expressed in subsection (2)(d), providing that a tortfeasor settling with the claimant has no contribution right against another "whose liability for the injury or wrongful death is not extinguished by the settlement... ." See Liberty Mutual, 327 So.2d at 86-87.
[4] Mo. Rev. Stat. § 537.060 (1969): "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution... ." May stated, 369 S.W.2d at 228: "[T]he statutory right of contribution between joint tortfeasors does not come into existence until a joint judgment is obtained... ."
[5] Cal.Civ.Proc.Code § 875(a) (Dearing): "Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided."
[6] Former N.Y.Civ.Prac.Law (Consol.) § 1401 provided: "Where a money judgment has been recovered jointly against defendants in an action for a personal injury or for property damage, each defendant who has paid more than his pro rata share shall be entitled to contribution... ."
[7] Sec. 1401, see n. 6, supra, was amended in 1974 to provide: "[T]wo or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."
[8] North Shore, 344 So.2d at 257: "The record reflects that no cross claims were filed by any of the defendants to the action and that the plaintiff did not take an appeal from the judgment in favor of [defendant] Dr. Martin."