452 So.2d 599 (1984)
Samuel SHERADSKY, Trustee, Appellant,
v.
Jesus BASADRE, Egbert E. Gorra, Georgina D. Gorra, His Wife, Egbert A. Gorra and Teresita Gorra, His Wife, Appellees.
Nos. 82-442, 83-701.
District Court of Appeal of Florida, Third District.
May 22, 1984.
Rehearing Denied July 16, 1984.
*600 Steven R. Berger, Samuel Sheradsky, Miami, for appellant.
Kenneth J. Duckworth, Miami, for appellees.
Before SCHWARTZ, C.J.,[*] and BASKIN and FERGUSON, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
In the action below, County-Wide Commercial Laundries, Inc. (original plaintiff) obtained a judgment for wrongful eviction against the purchasers of an apartment house, Basadre and the Gorras (defendants/third-party plaintiffs), who in turn obtained a third-party judgment against the seller of the property, Sheradsky (third-party defendant). The novel procedural question presented is whether the third-party defendant may obtain relief from the third-party judgment by successfully challenging the merits of the original plaintiff's case, even though defendants/third-party plaintiffs have not taken an appeal from the original judgment. The substantive question involved is whether a lease agreement which provides for automatic renewal at the end of the period, without more, contemplates a perpetual lease.
Appellant has persuaded us that reversal is required. Our holding on the first question is that, notwithstanding the failure of a defendant/third-party plaintiff to appeal, where there is error in the original judgment a third-party defendant may seek review of that judgment in an attempt to set aside the otherwise error-free third-party judgment. On the second question, we hold in accordance with settled authority that, in the absence of clear intent of the parties to create a lease in perpetuity, a covenant to renew is satisfied by one renewal.
*601 In 1971, appellant Sheradsky purchased the Colony House Apartments. Approximately two years earlier, the prior owners had entered into a purported business lease agreement whereby County-Wide Commercial Laundries, Inc. (now Commercial Laundries, Inc.) installed washing machines on the premises. This agreement, dated November 26, 1969, provided for an initial term of five years, and further provided that:
This lease shall automatically renew under the same terms and conditions as listed above, unless either party, by written notice within 60 days of expiration date, declines to renew said lease.
Sheradsky testified that he was unaware of, and had no record notice of, any specific business lease, and that he assumed there was only a month-to-month tenancy which was terminable at will.
In 1980, Sheradsky agreed to sell the property in question to appellees Basadre and the Gorras. Among the documents presented to the trial court regarding the sale was an affidavit executed by both parties stating that any contract regarding the income from washers and dryers "shall be terminated at the time of closing." Prior to closing, Sheradsky telephoned a County-Wide officer and told him that the machines had to be removed.
When the new purchasers took possession of the premises, they removed County-Wide's machines. County-Wide took the position that its five-year lease automatically renewed itself in 1974 and again in 1979, and brought suit against the purchasers Basadre and the Gorras for wrongful eviction under the agreement. The purchasers then sought recovery against Sheradsky under the terms of the aforementioned affidavit. Both Sheradsky (third-party defendant) and Basadre and the Gorras (defendants/third-party plaintiffs) defended against County-Wide's claim, contending (1) the lease was not notarized and was thus insufficient to bind them, and (2) assuming arguendo the validity of the lease, only one renewal was contemplated and there was no further automatic renewal in 1979. Also, as between Sheradsky and defendants/third-party plaintiffs, it was argued that the latter had the same knowledge and information regarding the existence of the lease as Sheradsky, and that any notice to Sheradsky was notice to them, precluding third-party liability.
The trial court found in favor of plaintiffs and awarded them $6,241.12 in damages for wrongful eviction, plus costs. The court also ruled, without further hearing, in favor of defendants/third-party plaintiffs on the third-party claim. This appeal is taken from the original judgment.
The same procedural question involving the right of a third-party defendant to appeal the merits of the original judgment was addressed by a federal court in the highly persuasive case of Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734 (5th Cir.1980). In Kicklighter, a buyer brought suit against the seller of fingernail restoration kits, seeking damages for injuries suffered from use of the product. The seller filed a third-party complaint against the manufacturer for indemnification. The trial court entered a judgment against the seller on the original complaint and a judgment against the manufacturer on the seller's suit for indemnification. The seller did not appeal. The manufacturer instead took an appeal, and sought to assert an error in the main case. It was held that a third-party defendant could obtain relief by challenging the merits of the main case. The court conceded that its opinion was without controlling authority but found that a number of federal and state cases supported its conclusion by analogy. Id. at 742 n. 8. Support was also found in Federal Rule of Civil Procedure 14, which gives a third-party defendant the authority to assert any defense which a defendant could have asserted. Id. at 738 n. 1.
The Kicklighter court also relied on sound policy reasons for its holding, including the deterrence of collusion between the plaintiff and defendant where liability will ultimately fall on a third party. The court further narrowed its holding so that a third-party defendant's successful appeal *602 operates also on behalf of defendant/third-party plaintiff only (1) where the judgment against the third-party defendant is based on liability which is derivative of defendant's liability, and (2) where the error successfully asserted by third-party defendant is an error in the main case, thus undermining the finding of defendant's liability. Id. at 744 n. 16.
F & D Property Co. v. Alkire, 385 F.2d 97 (10th Cir.1967) lends support for the proposition of law which Kicklighter extends. The litigation there involved delinquent rental payments under a lease. The lower court had granted summary judgment in favor of plaintiff against both the defendant and third-party defendant. The third-party defendant appealed the original judgment, claiming that he had not agreed to the complete stipulation of facts upon which summary judgment was granted. In holding that the third-party defendant should have responded to the motion for summary judgment and shown that there was a genuine issue for trial, the court cited Federal Rule of Civil Procedure 14, reasoning:
For the purpose of defense against plaintiff's complaint, a third party defendant is in the law suit as an adverse party to the same extent as the defendant and must act accordingly. This assures a third party defendant complete defense protection in an action where he may be liable for the judgment in favor of the plaintiff. Id. at 100.
See also 3 J. Moore, Moore's Federal Practice ¶ 14.19 (2d ed. 1984) (although third-party defendant is not a party to plaintiff's judgment against defendant/third-party plaintiff, "nevertheless, he has such an interest as would entitle him to appeal," suggesting that appeal may be properly brought in defendant/third-party plaintiff's name). Accord 6 C. Wright & A. Miller, Federal Practice and Procedure § 1463 and cases cited at n. 61 (1971).
Although there are no Florida cases precisely on point, the same philosophical thread which underlies the Kicklighter decision runs through Florida jurisprudence. In Christiani v. Popovich, 363 So.2d 2 (Fla. 1st DCA 1978), approved, 389 So.2d 1179 (Fla. 1980), a very enlightened court permitted a defendant, in a case under the Contribution Among Joint Tortfeasors Act, to appeal a judgment exonerating a codefendant, the effect of which judgment was to destroy the defendant's inchoate rights. The court held:
Even the most primitive notions of due process and equal protection of the law forbid denying judgment defendants as a class the right to appeal from judgments which adversely determine their substantial rights against exonerated codefendants... . Counterclaims against plaintiffs are now commonplace; and, in multi-party actions involving round-robin claims, counterclaims and crossclaims, it would be odd indeed to grant certain parties appeals on issues affecting contribution, while denying such appeals to others, because of party designations in the trial court. Id. at 7.
The Florida Supreme Court denied certiorari in that case, but wrote a brief opinion which approved the decision of the district court, stating in part:
We choose to follow the view that allows a judgment defendant the right of an appeal from a judgment which adversely affects his or her right against exonerated defendants. This is clearly the fairer and more logical result. To find otherwise places these defendants in a disfavored class and denies the opportunity to recoup their losses from the person or entity actually responsible. 389 So.2d at 1181.
The Kicklighter court relied on Federal Rule of Civil Procedure 14, from which Florida Rule of Civil Procedure 1.180 was adopted verbatim (see Committee Notes to Florida rule). Federal case law which construes a federal rule after which a Florida rule is patterned may be considered in interpreting the Florida rule, Pearlman v. Pearlman, 405 So.2d 764, 766 (Fla. 3d DCA 1981), as it must be assumed that in adopting a rule identical to a federal rule, our supreme court intended to achieve the *603 same results that would obtain under the federal rule. Zuberbuhler v. Division of Administration, 344 So.2d 1304, 1306 (Fla. 2d DCA 1977), cert. denied, 358 So.2d 135 (Fla. 1978).
We next consider the merits of the main case. As noted by the Florida Supreme Court in Sisco v. Rotenberg, 104 So.2d 365, 368 (Fla. 1958), citing several authorities, leases in perpetuity are universally disfavored, and if there is any uncertainty as to whether the parties intended a perpetual lease, the agreement should be construed so as to provide for only one renewal. Sisco was followed in Hutson v. Knabb, 212 So.2d 362 (Fla. 1st DCA 1968), a case which is factually similar to the present case except that the agreement there was more suggestive of perpetual renewals. In Hutson, the lease was for a period of five years with an option of renewal every five years. The court held that the option clause was insufficient to create a perpetual lease because the lease failed to specify when rent would be due and payable during any renewal period and because the printed portion of the agreement providing for time of payment had been crossed out.
In this case the five-year lease was executed in 1969, and had been renewed in 1974. The trial court found that a second automatic renewal in 1979 was contemplated by terms of the lease. The contested provision did not clearly exhibit an intent to provide for more than one renewal. Applying the just-cited authorities, we find error.
We decide next the effect of the error upon both judgments, the original judgment against the defendant/third-party plaintiff, and the third-party judgment which shifts liability to the third-party defendant.
County-Wide contends that the third-party defendant's liability is not derivative, thus the right of a third-party defendant whose liability derives from the liability of defendant/third-party plaintiff to appeal the original judgment has no application to this case. It reasons that no derivative liability exists here because its action against the purchasers of the apartment complex was based upon a personal tort, i.e. wrongful eviction, and any potential liability of Sheradsky to the purchasers is for breach of contract, based on Sheradsky's affidavit stating that any agreement regarding income from washers and dryers would be terminated prior to closing. While theoretically sound, the contention belies the complaint upon which the case was tried, and the proof presented at trial.
The claim of County-Wide is indeed couched in tort terms as an action for wrongful eviction. The complaint, however, alleges the existence of a lease, compliance with its terms by plaintiff, and breach by the defendants. More importantly, damages were computed as if the action were solely for breach of contract, as the award in this action was based upon loss of profits for the fifty months allegedly remaining in the lease. It follows that Sheradsky's liability is derivative and that he does have the right to appeal since the original judgment creating his liability necessarily required a determination that there was a valid five-year lease. Because we hold that no five-year lease was in effect, Sheradsky could not have breached any contract with the purchasers and he must be relieved of liability.
The record indicates that County-Wide did have a valid claim for wrongful eviction against defendants/third-party plaintiffs because the purchasers of the apartment complex unlawfully resorted to self-help to remove the machines in violation of Section 83.21, Florida Statutes (1983). The deposition of Egbert E. Gorra, accepted into evidence by the trial court, shows that the purchasers failed to utilize the summary procedure provided in Section 51.011, Florida Statutes (1983) to evict a tenant. Therefore, the trial court correctly determined that County-Wide was wrongfully evicted, a tort not dependent upon the existence of a valid five-year lease.
Where a tenant has been wrongfully evicted by his landlord, he may recover *604 general damages (the difference between market value of the leasehold and the rent payable under it), and, in addition, lost profits if such losses are ascertainable with a reasonable degree of certainty. Young v. Cobbs, 83 So.2d 417 (Fla. 1955); Ardell v. Milner, 166 So.2d 714 (Fla. 3d DCA 1964). Lost profits may only be recovered, however, for the remainder of the leasehold term. See Young v. Cobbs, 110 So.2d 651, 653 (Fla. 1959) (Young II). Since we previously stated that no valid lease was in effect when the wrongful eviction occurred in August 1980, the tenancy was one at will which ran from month-to-month, as the income from the machines was disbursed to the complex owners monthly. See § 83.01, Fla. Stat. (1983). The damages assessed at trial in the amount of $6,241.12 were erroneously based on lost profits, reduced to present value, for the fifty months found to be remaining on the lease. We accordingly remand this cause to the trial court for a new trial on damages against the defendants on the claim for wrongful eviction based on a tenancy at will.
County-Wide further argues that this court is without jurisdiction over it to set aside the original judgment because it was previously dismissed as a party to this appeal.[1] The dismissal, however, was predicated upon its own motion over appellant's strenuous objection. Parties who are severed from appellate proceedings willingly are as much bound by the adjudication made on appeal as they would be if not so severed. Triplett v. Trotter, 134 Fla. 784, 184 So. 250 (1938). Finally, although the judgment on the third-party claim was never actually appealed, we hold that the appeal of the original judgment operates, in effect, as an appeal of the third-party judgment as well and that, therefore, we have jurisdiction to reverse both judgments. See Kicklighter, 616 F.2d at 742 & n. 7 and cases cited therein.
The third-party judgment is reversed and the cause remanded with instructions to enter judgment for the third-party defendant. The original judgment is reversed in part and the cause is remanded for a new trial on damages as to the wrongful eviction claim against the original defendants.
NOTES
[*] Chief Judge Schwartz did not hear oral argument.
[1] On rehearing, however, County-Wide was invited to, and did participate in the appeal.