586 So.2d 1327 (1991)
U-HAUL CO. OF EAST BAY, a Corporation, and Kevin Gene Yoder, Defendants/Appellants,
v.
William D. MEYER and Mary L. Meyer, His Wife; Plaintiffs/Appellees, and
Ford Motor Company, Defendant/Appellee.
No. 90-2779.
District Court of Appeal of Florida, First District.
October 4, 1991.
*1328 A. Graham Allen and Patricia H. Clarkson of Allen, Brinton & Simmons, P.A., Jacksonville, for appellants.
David R. Lewis of Lewis, Paul, Isaac & Castillo, P.A., Jacksonville, for appellees William D. Meyer and Mary L. Meyer.
John M. Thomas, Office of the General Counsel, Ford Motor Co., Dearborn, Mich.; Francis M. McDonald, Jr. and Wendy Lumish of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Miami, for appellees Ford Motor Co.
JOANOS, Chief Judge.
Appellant U-Haul Co. of East Bay (U-Haul) appeals a final order in which the trial court entered summary judgment in favor of Ford Motor Company (Ford), in a lawsuit filed by William D. and Mary L. Meyer against U-Haul. The issue is whether the trial court erred in entering summary judgment for Ford after defendant U-Haul filed an affidavit which allegedly created an issue of fact as to liability of Ford to the plaintiffs. We reverse.
Plaintiffs William and Mary Meyer filed a negligence action against U-Haul Co., Inc., as owner, and Kevin Gene Yoder, as operator, of a motor vehicle which rearended the Meyers' Ford vehicle. After U-Haul filed an answer and affirmative defenses, plaintiffs amended their complaint to join Ford Motor Company as a codefendant, alleging negligent manufacture of the right front seat of the Ford vehicle driven by plaintiffs. The amended complaint further alleged that due to the negligent manufacture of the seat back, the seat bracket or device failed when the Ford vehicle in which William Meyer was a passenger was involved in a rear-end collision with the U-Haul vehicle driven by Yoder. When the collision occurred, William Meyer's seat back was thrown backward until it hit the front edge of the back seat, and William Meyer's neck, shoulders, and head impacted against the seat back when it collapsed.
U-Haul answered the amended complaint, raising two affirmative defenses based upon alleged defects in the plaintiffs' Ford vehicle. U-Haul alleged that the negligent design or manufacture of the seat back, resulting in its collapse upon impact, constituted an independent intervening cause of all or part of the injuries of plaintiff William Meyer.
After receipt of plaintiffs' responses to requests for admissions, Ford filed a motion for summary judgment, alleging that it was not negligent in the design or manufacture of the seat bracket or seat back of the right front seat of the subject vehicle. In support of its motion, Ford filed an affidavit of one of it engineers, which states in part:
3. The seat in question complies with Federal Motor Vehicle Safety Standard 207 and is designed to yield rearward in sufficiently severe rear-end collisions. The purpose of the yielding design is to absorb the energy of the occupant during the collision, thereby reducing the forces upon the occupant and minimizing injuries.
4. From my review of the accident report, copies of photographs of the subject vehicles, and my understanding of the accident, it is my opinion that the seat back of the 1987 Mercury Cougar performed as designed by Ford Motor Company.
*1329 U-Haul then filed a motion for leave to file cross-claim against Ford, for contribution for economic damages for that portion of a final judgment attributable to Ford's negligence. In addition, U-Haul filed an affidavit of Clayton A. Morrison, mechanical engineer. This affidavit sets forth the following opinion:
4. From my investigation of the accident site; review of the police report, review of photographs of vehicles and the accident site; review of Federal Motor Vehicle Safety Standard No. 207; and performance of calculations and analysis, it is my opinion that
(a) The U-Haul truck was travelling at a speed of approximately six miles per hour when impact occurred.
(b) If the seat back of the 1987 Mercury Cougar is designed to collapse on impact at such a low speed (six m.p.h.) rear end collision, it does not comply with the purpose and scope of the federal Motor Vehicle Safety Standard 207 (attached).
(c) If the seat back in question was designed by Ford Motor Company to yield rearward only in sufficiently severe rear-end collisions, it failed to perform as designed when it yielded rearward in a six m.p.h. collision.
(d) Car seats must remain in place if they are to afford any protection to their occupants. A car seat which collapses on impact, especially at low speeds, adds to the hazards that are inherent in crash situations.
At the hearing on Ford's motion for summary judgment, U-Haul's counsel maintained that entry of summary judgment would not be appropriate, noting that defendants U-Haul and Yoder had a cross-claim pending. The trial court advised that U-Haul's remedy would be a third-party complaint. The summary judgment filed December 19, 1989, provides in part:
Defendant, U-Haul Co. of East Bay and its driver, defendant Yoder ..., had raised two affirmative defenses alleging design defects in the Ford vehicle. There was also pending a motion on the part of U-Haul for leave to file a cross-claim against Ford, seeking contribution from Ford as a joint tort-feasor. As a consequence U-Haul opposed Ford's Motion for Summary Judgment as it applied to U-Haul, and filed the affidavit of Clayton A. Morrison, an engineer specializing in accident reconstruction and analysis, in opposition to the motion.
The Court finds that as the plaintiffs have not opposed Ford's Motion for Summary Judgment, Ford is entitled to a judgment as to the claims of the plaintiffs. However, issues of material fact remain in regard to certain defenses raised by U-Haul, and in regard to U-Haul's potential contribution claim against Ford.
Although summary judgment was granted in favor of Ford with regard to plaintiffs' claim that Ford negligently manufactured plaintiffs' vehicle, the trial court further ordered:
2. That summary judgment entered herewith shall not be effective as to the sixth and seventh affirmative defenses raised by U-Haul; nor shall U-Haul be precluded from seeking contribution from Ford in a third party action, should it choose to do so.
Plaintiffs moved for rehearing, due to the inadvertent absence of their counsel, which left them unrepresented at the prior hearing. At the hearing on the motion for rehearing, plaintiffs' counsel objected to the summary judgment reference preserving U-Haul's sixth and seventh affirmative defenses. U-Haul's counsel agreed that Ford seemingly was entitled to summary judgment with respect to plaintiffs' claims, because plaintiffs took no action to oppose Ford's affirmative defenses and supporting affidavit. However, U-Haul contested a grant of summary judgment to Ford in toto, asserting that to do so would be res judicata as to U-Haul's affirmative defenses and any right U-Haul would have against Ford on a contribution claim. Thereafter, the trial court again entered *1330 summary judgment as to the claims of plaintiffs against Ford. This summary judgment was in an abbreviated form, and contained no reference to the affidavit filed by U-Haul to U-Haul's affirmative defenses.
The principles governing grant of summary judgment are well settled, i.e., "a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985). Further, caution should be exercised with respect to a grant of summary judgment in negligence actions. Id. See also Unijax, Inc. v. Factory Insurance Assoc., 328 So.2d 448, 449 (Fla. 1st DCA 1976), cert. denied, 341 So.2d 1086 (Fla. 1976).
Although the issue in this case is the propriety of the grant of summary judgment to Ford Motor Co., determination of that issue implicates the proper application of section 768.31(4)(f), Florida Statutes (1989), which provides:
(f) The judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution.
In Christiani v. Popovich, 363 So.2d 2 (Fla. 1st DCA 1978), the court considered a grant of summary judgment to one codefendant and a directed verdict as to another codefendant, in the context of section 768.31(4)(f). The first question was whether judgment codefendants may appeal asserted error in the judgments which exonerated two other codefendants of liability (one by summary judgment, and the other by directed verdict). The court held that they may, reasoning that a judgment defendant is demonstrably aggrieved by the exoneration of a codefendant. The court then held that "a right to appeal is a necessary consequence of Florida's Contribution Act, which destroys the judgment defendant's inchoate contribution rights  rights which may mature on payment of the judgment  against an exonerated codefendant." 363 So.2d at 6. Consequently, a defendant claiming contribution from a codefendant for potential liability to plaintiff must timely appeal a judgment exonerating that codefendant from liability. Id., at 10.
The Christiani v. Popovich decision was approved and adopted by the supreme court in Pensacola Interstate Fair, Inc. v. Popovich, 389 So.2d 1179 (Fla. 1980). There, the court observed that the policy-making issue for its determination related solely "to the right of a judgment defendant aggrieved by the exoneration of another codefendant to timely appeal from the appropriate judgment." 389 So.2d at 1181. The court found that fairness and logic dictate that a judgment defendant should be allowed the right of an appeal from a judgment which adversely affects his or her right against exonerated defendants. Id.
Subsequently, in Holton v. H.J. Wilson Co., Inc., 482 So.2d 341 (Fla. 1986), the court clarified its decision in Popovich, to hold that a defendant's right to appeal from a judgment exonerating a codefendant must be exercised within thirty days of that final judgment, pursuant to Florida Rule of Appellate Procedure 9.110(b). In so doing, the court overruled prior decisions which had construed Popovich as allowing a defendant to appeal a judgment exonerating a codefendant only after he had suffered an adverse judgment in favor of the plaintiff or settled with the plaintiff. The court explained that "[w]e are principally concerned here with the relationship between two defendants. A timely appeal by one defendant of a ruling exonerating another as against the plaintiff is necessary only because, in this context of contribution and indemnity, a finding of nonliability to the plaintiff determines the second claim on the merits." 482 So.2d at 344. Further clarifying the point, the court ruled: "In any case involving contribution, *1331 ... the initial judgment exonerating a defendant must be timely appealed by a codefendant or never heard." 482 So.2d at 345. See also South Puerto Rico Sugar Co. v. Tem-Cole, Inc., 403 So.2d 494 (Fla. 4th DCA 1981), review denied, 412 So.2d 470 (Fla. 1982).
The record in this case reflects that the trial court believed that, absent opposition by the plaintiffs, Ford was entitled to summary judgment as a matter of law. Thus, the award of summary judgment to Ford decided the issue of liability in Ford's favor. The supreme court's decision in Holton and its affirmation of this court's decision in Christiani v. Popovich establish that a codefendant in a tort action, not only may, but must, oppose a judgment relieving a codefendant of liability, or lose any future right to contribution from that codefendant. Inherent in the right to oppose a grant of summary judgment to a codefendant is the right of the non-moving codefendant to demonstrate the existence of a genuine issue of material fact with regard to the plaintiff's claims against the moving codefendant.
By the affidavit of its mechanical engineer, U-Haul demonstrated the existence of a genuine issue of material fact with respect to the design and manufacture of the seat backs in the Ford vehicle. In addition, the affidavit filed by Ford's engineer appears insufficient to refute the allegations of the second amended complaint. The transcripts of the hearings on Ford's motion indicate the trial court was persuaded more by the plaintiffs' lack of opposition to the motion, than by the sufficiency of Ford's affidavit to overcome the allegations of the complaint.
Because there exist genuine issues of material fact as to Ford's liability for negligent design and manufacture, the final summary judgment in favor of Ford is REVERSED.
BOOTH and ALLEN, JJ., concur.