**John W. GOLLICK, Plaintiff,**

v.

**The NEW YORK CENTRAL RAILROAD COMPANY, a corporation, and United States Gypsum Company, a corporation, Defendants.**

**No. 14347.**

United States District Court
E. D. Michigan, S. D.
Feb. 7, 1956.

Henslee, Monek & Murray, Chicago, Ill., Emerson H. Schink, Detroit, Mich., of counsel, for plaintiff.

George H. Wyatt, Detroit, Mich., for New York Cent. R. Co.

Crawford, Sweeny, Dodd & Kerr, Detroit, Mich., for U. S. Gypsum Co.

PICARD, District Judge.

Suit by John W. Gollick against New York Central Railroad Company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and United States Gypsum Company under the common law to recover damages for personal injuries sustained on premises of the Gypsum Company, while employed as train conductor by New York Central. The Railroad thereupon filed a cross action against Gypsum on the theory that the Gypsum Company is liable for any sum the Railroad might be required to pay Gollick on an indemnity contract. In that contract The New York Central Railroad Company is referred to as "Railroad Company" and the Gypsum Company as "Industry".

It was admitted that Gollick could recover from the Railroad Company if he could prove that at time of injury he was acting within the scope of his employment, and that the Railroad Company had failed to furnish him a safe place to work. Both points being admitted the Railroad Company settled with Gollick for $5,500 after the case was started and by consent of the Industry, reserving, however, the question of reimbursement under the contract.

### Findings of Fact

Gollick was knocked off the side of a box car upon which he was riding when his body contacted a steel "I" beam located perpendicularly between two sets of tracks running into the Gypsum Company's River Rouge plant. The "I" beam was part of the brace of a Kennear door installed by Gypsum but when the door was lifted it was necessary to separately remove the "I" beam by unhooking the bottom from the floor and sliding it to the side wall, so that during switching operations there would be the necessary clearance between the inside rails. The accident happened at night after the Gypsum employees had left the plant and it is fair to conclude from the evidence that the Kennear door was opened by the Railroad Company employees who in doing so failed to remove the "I" beam. Gollick was injured as he was riding on the side of a box car pulling out of the plant when he was brushed off.

The pertinent parts of the agreement read as follows:

"Whereas, *the Industry has requested* the Railroad Company to install side tracks to connect with the Railroad Company's line of railroad in the City of River Rouge, State of Michigan; * * * (Emphasis ours).

"Third: The Industry shall keep said tracks clear of obstructions, and shall not place or allow any temporary or permanent structure or other obstruction of any kind within the space of six feet (6') laterally from the rails of said tracks, or within the space of twenty-two feet (22') above the said tracks (being the standard clearances of the Railroad Company), except that the clearances may be less than standard and as stated below, at the points indicated on said plan, as follows: * * *

"The Industry shall indemnify, and hold harmless, the Railroad Company from any and all liability for loss of life or damage or injury to property or persons (including employees and property of either of the parties hereto), arising by reason of, or which in any way results from, the existence or maintenance of structures or obstructions at clearances less than standard and/or doors which the Industry desires to install over the two northerly tracks at the entrance to building or the collision of cars or engines with said doors. * * *

"Seventh: * * * Except as herein otherwise provided, the Industry shall also indemnify, and hold harmless, the Railroad Company from loss, damage, injury or death from any acts or omissions of the Industry, its employees or agents, to the persons or property of the parties hereto and their employees, and to the person or property of any other person or corporation while on or about said side track * * *;

and, if any claim or liability, other than from fire, shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."

On these facts we find that the intention of the parties was to include "negligence" without writing the word "negligence" into the contract and that the Railroad Company, while denying negligence of its employees, contends that even though they had been negligent, the Gypsum Company is still liable for all damages paid Gollick pursuant to the indemnity agreement.

On the other hand, Gypsum contends—

(a) That the Railroad Company, having failed to remove the "I" beam when it opened the door, Gypsum cannot be said to have "maintained" the obstruction ("I" beam) that caused the accident.

(b) The indemnity contract was not intended to include indemnity of the Railroad Company for its own negligence.

### Conclusions of Law

The Industry contends that since the "I" beam in question was removable, and since the Railroad Company's train crew opened the door and neglected to remove the "I" beam, that therefore, the Industry cannot be said to have "maintained" the obstruction ("I" beam) that caused the accident.

We think this contention untenable. The word "maintain", according to Webster's Dictionary, means:

"to hold or keep in any particular state or condition;

"to bear the expense of;

"to keep, hold, retain"

The Railroad Company did none of these things. The door and "I" beam were installed by the Industry and the expenses of their installation and upkeep were paid by the Industry, not the Railroad Company. Nor do we feel that the Railroad Company's employees' knowledge of the existence of the beam, having in times past opened the door and removed the same, amounts to mainte-

nance by the Railroad Company. The fact remains that the Industry built the door of which the "I" beam was a part. The Railroad Company did not maintain it. On the night of the accident its employees allegedly failed to remove it; which is different. The fact that they had at other times removed the beam did not amount to a voluntary modification of the contract unless the Railroad Company held them out as its agents having that particular authority, which it did not. See Modern Globe v. 1425 Lake Drive Corp., 340 Mich. 663, 66 N.W.2d 92.

We pass to the question of whether or not the contract intended to include indemnity of the Railroad Company where the accident was caused in part by negligence of its own employees. Paragraph Third of the indemnity contract, after providing that the Industry shall not place nor allow any temporary or permanent structure or obstruction within six feet laterally of the tracks then said:

"The Industry shall indemnify, and hold harmless, the Railroad Company from any and all liability for loss of life or damage or injury to property or persons (including employees and property of either of the parties hereto), arising by reason of, *or which in any way results from, the existence or maintenance of structures or obstructions at clearances less than standard* (six feet) * * *" (2d Parenthesis and emphasis ours).

The Industry "maintained" the "I" beam and in view of the language above quoted it is clear that the intent of the parties was that if the obstruction in any way contributed to the injury, the Industry was to indemnify the Railroad Company therefor without regard to the latter's negligence. The same conclusion was reached in the following cases wherein the courts were interpreting contracts similar to the case at bar. Watkins v. Baltimore & O. R. Co., D.C., 29 F.Supp. 700; Booth-Kelly Lumber Co.

v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695; Deep Vein Coal Co. v. Chicago & E. I. R. Co., 7 Cir., 71 F.2d 963, and Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347, 348. In the Sixth Circuit case, Buckeye Cotton Oil Co. v. Louisville, & N. R. Co., after holding that public policy does not prevent the Railroad Company from contracting with a third party for indemnity against damages caused by the ordinary negligence of its employees, the Court said:

"It is said, however, and rightly so, that a contract will not be so construed, unless it was clearly intended to have that effect. This, of course, does not mean that the intention must be expressed in terms, but that, if not so expressed, it must otherwise clearly appear in the language used. * * *

"The clause here in question covers the claims and demands of all persons on account of any 'damages or injuries caused directly or indirectly by the existence, location or condition of any structure or obstruction' on the premises or the tracks of the oil company. * * * We think an operating condition such as that, though involving some negligence on the part of the crew in moving the car, was within the indemnity contemplated by the contract."

We think the language above quoted controls here and in addition disposes of Industry's contention that the word "negligence" was not written into the contract.

The authorities cited by the Industry in its brief are not in point. They simply hold that the indemnitor is not liable to the indemnitee where the injuries occur solely by reason of the negligence of the latter. In the case at bar Gollick's injuries, regardless of whether they were contributed to by the train crew's failure to remove the "I" beam, were also caused by the Industry's negligent violation of its contract, to-wit: maintenance of a structure closer than

six feet laterally to the tracks. Under the contract it was the Industry's duty to see that the "I" beam was removed. Having failed to do so renders the Industry liable.

Nor does paragraph seventh of the contract, providing that in case of joint negligence, the damages shall be borne equally, have any application. That paragraph begins with "Except as herein otherwise provided". Suffice to say that in the third paragraph there is such a provision "otherwise". See Deep Vein Coal Co. v. Chicago & E. I. R. Co., supra, and Ruddy v. New York Central Railroad Co., D.C., 124 F.Supp. 470, 475. It is true as stated by the Industry that the Ruddy case supra, was reversed on appeal. But the reversal did not affect the construction of the seventh paragraph by the District Court since the sole reason for reversal was failure to show that the offending structure contributed to the accident. In the case before us there is no question but what the offending structure did contribute to the accident.

For the reasons above given the Industry should indemnify the Railroad Company for the full amount of Gollick's injuries.