362 So.2d 45 (1978)
SOL WALKER & COMPANY, a Florida Corporation, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY, Appellee.
No. 77-1487.
District Court of Appeal of Florida, Second District.
July 26, 1978.
As Modified On Denial of Rehearing September 1, 1978.
*47 John R. Bush and Claude H. Tison, Jr. of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Ronald D. McCall of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee.
GRIMES, Chief Judge.
This appeal involves complex questions of res judicata, indemnity and contribution.
Appellant (Walker) is a scrap iron dealer in Tampa. In order to ship scrap Walker maintains on its premises sidetracks which connect to the main line of appellee (Seaboard). The parties entered into a sidetrack agreement which contained a provision requiring Walker to indemnify Seaboard for liability incurred through Walker's *48 negligence and providing that claims arising from the joint or concurring negligence of both parties would be borne by them equally.
Each day, as a matter of practice, Seaboard would deliver open gondola cars to Walker's scrap iron yard. Walker would load the cars and complete an "OC-1" form for each car which noted that the car had been loaded in good order and condition and was ready for shipping and handling. Seaboard picked up the cars each night. The Seaboard crew was required to inspect each loaded car and to refuse to move any car found to be improperly loaded.
On November 14, 1973, Seaboard picked up four cars loaded by Walker earlier that day. The cars were taken to another location and left overnight to await further handling in the morning. The following day another Seaboard crew transported the cars to a second yard where they were to be placed on tracks leading to their final destination. In the process of uncoupling one of the cars a "cut lever" failed to stay up in the release position, so that John Warder (Warder), a Seaboard switchman, had to run along side of the car and manually hold the lever up in order to uncouple the car when it was "kicked" forward by the thrust of the engine. As he was running with the car and holding the lever a heavy bale of scrap iron fell from the car and struck him on the leg and foot causing him severe injury.
Warder brought suit against Walker and Seaboard. Walker was alleged to have been negligent in loading the car, and Seaboard was alleged to have been negligent in failing to inspect the loaded car and in allowing it to be operated with a defective coupling mechanism. At the conclusion of the plaintiff's case, Walker obtained a directed verdict. Warder's case against Seaboard was submitted to the jury, and the jury returned a verdict against Seaboard in the sum of $106,000.
Thereafter, Seaboard filed a complaint against Walker for indemnity and contribution. The six-count complaint sought the following relief:
Count I  indemnification upon allegations of Walker's active negligence and Seaboard's passive negligence;
Count II  recovery for breach of contract on allegations that the OC-1 form constituted a warranty that Walker had loaded the car in good order and condition;
Count III  indemnity under the sidetrack agreement;
Count IV  contribution under the sidetrack agreement;
Count V  contribution under the Uniform Contribution Among Tortfeasors Act;
Count VI  indemnity and contribution upon allegations that Walker was guilty of willful and wanton misconduct.
After Seaboard presented its case, Walker moved for a directed verdict. The court granted a directed verdict on Counts I, V, and VI but permitted the remaining counts to go to the jury. The jury returned a verdict in favor of Seaboard for $58,587.72, an amount equal to one half of the sum of the Warder judgment and attorneys' fees. Walker now appeals this judgment, and Seaboard cross-appeals the order directing verdicts on Counts I, V, and VI.
The overriding issue on this appeal is whether the judgment exonerating Walker in the Warder action was res judicata so as to preclude the relitigation of Walker's responsibility in the case below. Before resolving this issue, however, we deem it advisable to first address several other questions.
Walker contends that Counts III and IV should not have been submitted to the jury because the indemnity provision upon which these counts were predicated was not applicable to the Warder accident. The pertinent provision of the sidetrack agreement reads as follows:
Shipper will indemnify and hold Railroad harmless for loss, damage or injury from any act or omission of Shipper, his employees or agents, to the person or property of the parties hereto and their employees, and to the person or property *49 of any other person or corporation, while on or about the track, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.
Walker asserts that this provision is wholly inapplicable because the accident occurred at a location far away from the sidetrack covered by the agreement.
The question is what do the words "while on or about the track" modify? If they modify the words "any act or omission of Shipper," then this provision would be applicable because Walker's alleged negligence occurred on the track even though the accident happened elsewhere. On the other hand, if the words modify "loss, damage or injury ... to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation," then the provision is inapplicable because Warder's injury took place several miles away.[1]
While this provision appears to be customarily used in railroad sidetrack agreements, there are no cases directly on point. The same question involving the same language was presented in Huck v. Chicago, St. Paul, Minneapolis and Omaha Ry. Co., 5 Wis.2d 124, 92 N.W.2d 349 (1958), but an answer to this problem became unnecessary when the court concluded that an injury which occurred only 60 feet away from the track was close enough to be considered as an injury occurring "on or about the track." Also, the judge's observations in Southern Railway Co. v. Brunswick Pulp & Paper Co., 376 F. Supp. 96 (S.D.Ga. 1974), cannot be deemed controlling because the pertinent language of the indemnity provision in that sidetrack agreement was not the same.
We find that either construction of this provision is logical. From the standpoint of Seaboard, we can see why it would wish to be indemnified for accidents caused by Walker's negligence regardless of where they occurred. By the same token, Walker could be expected to wish to limit its liability to accidents occurring on or about its premises. Because of this impasse we find it necessary to employ two well established maxims of construction, both of which weaken Seaboard's position. The first is the rule that a provision in a contract will be construed most strongly against the party who drafted it, in this case Seaboard. Lindquist v. Burklew, 123 So.2d 261 (Fla. 2d DCA 1960). The second is that where an indemnification is not given by one in the insurance business but is given incident to a contract whose main purpose is not indemnification, the indemnity provision must be construed strictly in favor of the indemnitor. Thomas v. Atlantic Coast Line R. Co., 201 F.2d 167 (5th Cir.1953). The positioning of the words "while on or about the track" in the sentence also tends to slightly favor Walker. Therefore, in the absence of other guidance, we conclude that the indemnity provision of the sidetrack agreement was inapplicable because the accident did not occur "on or about the track."
We also believe that the court should have directed a verdict on Count II. The OC-1 printed form upon which this count was based was a shipping order and receipt for cargo in which Walker acknowledged
(I or we) have loaded in good order and condition the cars shown below and same is ready for handling as indicated. Please forward subject to carrier bill of lading.
This language seems more logically directed to the condition of the goods at the time they are loaded rather than the manner in which they have been loaded. Perhaps this provision would have been significant if there had been a claim that the scrap had been damaged during the shipment.[2]See *50 Annot., 33 A.L.R.2d 867 (1954). In any event, we fail to see how this provision of the OC-1 could constitute an express warranty, the breach of which makes Walker liable for injuries to a third party.[3]
On the cross-appeal, Seaboard's contentions with respect to Counts I and VI may be easily disposed of. On Count I Seaboard's negligence was at least as active as the negligence of Walker. Not only did Seaboard have a responsibility to inspect the car for an improper load, but it was Seaboard's defective coupling device which ultimately caused Warder to be in the position where the scrap could fall on him. As far as Count VI is concerned, the evidence falls far short of that necessary to demonstrate that Walker was guilty of willful and wanton misconduct.
Count V merits more consideration. This was a claim for contribution under Section 768.31, Florida Statutes (1975), under which Seaboard asserted that the parties were joint tortfeasors and that by virtue of a judgment against it, Seaboard was entitled to recover half of the amount paid to Warder. The effective date of the Uniform Contribution Among Tortfeasors Act was June 12, 1975. The act provided that it would apply to all causes of action pending on the effective date wherein the rights of contribution among joint tortfeasors were involved and to cases thereafter filed. Section 768.31(7). By that date the Warder trial had taken place, but the appeal was still pending and the present suit had not yet been filed. Therefore, the statute applied to Seaboard's claim for contribution, providing Seaboard fit within its provisions. Warn Industries v. Geist, 343 So.2d 44 (Fla. 3d DCA 1977).
Even in the absence of concerted action between Walker and Seaboard, there was a jury question on whether the negligent acts of these parties combined to become the direct and proximate cause of a single injury to Mr. Warder.[4] Hence, we believe that Walker and Seaboard were tortfeasors within the scope of the Uniform Act. Leesburg Hospital Association, Inc. v. Carter, 321 So.2d 433 (Fla. 2d DCA 1975). It was not necessary that Warder have a judgment against both Seaboard and Walker for Seaboard to pursue its claim for contribution against Walker in a separate action. Section 768.31(4)(a). Even though Warder's claim against Seaboard was under the Federal Employers' Liability Act (FELA), Seaboard would not be precluded from obtaining contribution from Walker under the Uniform Act where, as here, comparative negligence rather than contributory negligence was applicable to both Warder's claim against Seaboard under FELA and Warder's claim against Walker for ordinary negligence. Annot., 19 A.L.R.3d 928 (1968). The fact that the source of Seaboard's liability was statutory and Walker's common law is irrelevant because the theory of contribution among tortfeasors is predicated upon the fact that all are legally liable to respond in damages to an injured party because of their wrongful act. Southern Railway Co. v. Foote Mineral Co., 384 F.2d 224 (6th Cir.1967); Reynolds v. Southern Railway Co., 320 F. Supp. 1141 (N.D.Ga. 1969).
As a consequence of the submission of Count IV to the jury, the jury was instructed that Seaboard was entitled to recover one half of the amount of the Warder judgment if the accident was caused by the negligence of both parties. It is evident from the verdict that the jury concluded that the negligence of both parties concurred in proximately causing Warder's injuries. Given these findings, if Seaboard's claim under Count V had been submitted to the jury, the verdict should have been the same, because under the provisions of the *51 act applicable to this suit[5] the liability of two responsible tortfeasors was to be shared equally. Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975). Therefore, because the verdict, even though submitted on counts which should have been removed from the jury's consideration, could probably stand if based  as Seaboard contends it should have been  on Count V, it is necessary for us to consider Walker's argument that Seaboard's claims were precluded by the judgment in the Warder suit.
Walker relies primarily upon Jackson v. Florida Weathermakers, 55 So.2d 575 (Fla. 1951). This case involved an accident in a grocery store owned and operated by Jacksonville Meat Company (Jax Meat) caused by a piece of tile which fell from the ceiling and struck a customer. At the time of the accident, Florida Weathermakers, Inc. (Weathermakers) was installing an air conditioning system in the store pursuant to a contract with Jax Meat. Weathermakers had subcontracted the electrical wiring to Hall Electric (Hall), and Hall's men were working over the ceiling when the accident occurred.
The injured customer and her husband brought suit against Jax Meat, Weathermakers, and Hall. Jax Meat filed cross-claims against Weathermakers and Hall, alleging that by virtue of its contract with Weathermakers, one or both of its codefendants would be liable for any damages incurred by Jax Meat as a result of the suit. The cross-claims were dismissed upon the motions of the two codefendants, whereupon the case went to trial on the issues of each defendant's negligence as charged in the complaint. The jury returned a verdict in favor of the plaintiffs against Jax Meat but exonerated Weathermakers and Hall from all liability.
On appeal, Jax Meat first contended that it was only derivatively liable for the injury which had been caused by Hall, and that because Hall was exonerated, Jax Meat could not be held liable. The supreme court rejected this argument by pointing out that there was evidence to support the conclusion that Jax Meat was independently negligent for having permitted the public to shop in its store while the work was going on overhead. The court likewise rejected Jax Meat's contention that its negligence was not a proximate cause of the injury.
Jax Meat also contended that the trial judge had erred in dismissing its cross-claims for indemnity against Weathermakers and Hall. The court concluded that the cross-claims sufficiently stated a claim for indemnity arising out of the contract. Thus, the judgment for the plaintiff was affirmed, but the case was remanded with directions to reinstate the cross-claims against Weathermakers and Hall.
On rehearing the court addressed the propriety of the cross-claims and first made the following observation:
After the cross-claims were dismissed, the trial court proceeded to a trial on the question of the negligence of each defendant. The transcript reflects that each defendant separately defended the charge against it and actively participated in the examination or cross-examination of the witnesses, and it appears that the defendants did actually litigate adversely among themselves the question of whether the plaintiff's injuries were caused "solely and proximately" by reason of the negligence of Hall's employees, as alleged in the cross-claims. Under such circumstances, the jury's verdict of "not guilty" as to Hall must be held to be res adjudicate of the question of Hall's negligence. (Citations omitted.)
Jackson v. Florida Weathermakers, supra at 579. Construing the contract upon which Jax Meat predicated its claim as an agreement to indemnify only against the negligence of the indemnitor, the court stated that because Weathermakers and Hall were exonerated by the verdict, the matter had been set at rest. The court concluded that because the issues of fact presented by the cross-claims were actually litigated and determined adversely to Jax Meat, the dismissal *52 of the cross-claims was harmless error. The judgment was affirmed in its entirety.
One of the authorities relied upon by the supreme court for its decision in Jackson v. Florida Weathermakers, supra, was Restatement of Judgments § 106 (1942), which reads as follows:
When an action is brought against two person who are claimed to be parties in a single contract or liable for a single harm, and valid and consistent judgments are rendered with respect to each, the judgment for or against one of them is conclusive upon the other as to matters decided therein, in a subsequent action between them for indemnity or contribution, if and only if the other had an opportunity to defend or to participate in the defense.
Obviously, the court concluded that even though Jax Meat had not been permitted to prosecute its cross-claims, it "had an opportunity to defend or to participate in the defense." The only point upon which Jackson can be distinguished is that the codefendants in that case were exonerated by a jury verdict; whereas, here, the court directed a verdict in favor of Walker before Seaboard had an opportunity to present its own witnesses. Yet, for purposes of res judicata, judgments entered upon directed verdicts generally have the same effect as those based upon a jury verdict. See Fla.R. Civ.P. 1.420(b); 19 Fla.Jur. Judgments and Decrees § 144 (1958); Truscheff v. Abell-Howe Co., 239 N.W.2d 116 (Iowa 1976).
The case of Liberty Mutual Insurance Co. v. Curtiss, 327 So.2d 82 (Fla. 1st DCA 1976), is also pertinent. In Liberty Mutual an automobile accident occurred in Georgia in which Melvin drove a truck into the rear of an automobile and injured passengers Adkins, Mobley, and Robinson. The driver of another truck, Curtiss, was also allegedly a cause of the accident. Adkins sued Curtiss, Melvin, and Melvin's liability insurance carrier, Liberty Mutual, in a Florida court. The court entered summary judgment for Curtiss on Adkins' claim, whereupon Melvin and Liberty Mutual paid Adkins a settlement. Melvin and Liberty Mutual made separate settlements with Mobley and Robinson.
Liberty Mutual then brought a new suit against Curtiss for contribution with respect to the payments made to the three injured passengers. Summary judgment was entered against Liberty Mutual. On appeal, the First District Court of Appeal initially observed that Georgia law determined whether, and on what terms, the right of contribution arose in favor of Liberty Mutual. The court concluded that Georgia law permitted the assertion of a claim for contribution even though the payments for which contribution was sought had been made by way of settlement rather than in satisfaction of a judgment in favor of the injured parties. The court then stated that Florida law would control the effect the Florida judgment exonerating Curtiss of liability to Adkins would have on the contribution claims. Pointing out that the liability of Melvin, Liberty Mutual, and Curtiss to Mobley and Robinson had not been directly litigated in the Adkins case, and that there had been no adversarial litigation between the codefendants on their respective responsibilities for the wreck, the court held that Liberty Mutual was not precluded from seeking contribution for the payments to Mobley and Robinson.
On the other hand, the court held that Liberty Mutual could not claim contribution for the payment to Adkins because of the summary judgment exonerating Curtiss from liability to Adkins. The court reasoned that the issue was not whether Liberty Mutual had had its day in court on the question of Curtiss' liability, but rather that the appeal turned on the fact that Curtiss shared no common liability with Melvin and Liberty Mutual to Adkins for which Melvin and Liberty Mutual were entitled to seek contribution. Contribution rests upon the premise that one tortfeasor has discharged a common liability shared by another tortfeasor, and it could not be said that Melvin and Liberty Mutual had discharged a liability to Adkins which they shared with Curtiss. The court acknowledged that its holding was patterned after *53 a line of Minnesota decisions representing a minority view.
While pointing out that Florida's new Contribution Among Tortfeasors Act did not apply to the case before it, the court observed that had it applied there was a provision in the statute which would have dictated the same conclusion the court reached without the benefit of the statute. The court referred to Section 768.31(4)(f), Florida Statutes (1977),[6] which states:
The judgment of the court in determining the liability of the several defendants to the claimant for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution.
In view of Jackson v. Florida Weathermakers, supra, and Liberty Mutual Insurance Co. v. Curtiss, supra, as well as Section 768.31(4)(f), we hold that Seaboard's claim for contribution under Florida's Uniform Contribution Among Tortfeasors Act was precluded by the judgment upon directed verdict in favor of Walker entered in the Warder suit to which Seaboard was a party.[7]
If an adjudication against the plaintiff in favor of one defendant is going to be binding upon a codefendant in subsequent litigation, it seems reasonable that the codefendant who is to be bound should have the right to appeal the initial adjudication in favor of his codefendant. Our sister court seemed to imply as much in Liberty Mutual Insurance Co. v. Curtiss, supra; but see North Shore Hospital v. Martin, 344 So.2d 256 (Fla.3d DCA 1977). While the supreme court did not expressly say so, Jax Meat actually obtained that right of appeal in Jackson v. Florida Weathermakers, supra, insofar as it related to the validity of the claim for indemnification.[8] Since Jax Meat did not point to any error leading to the verdict exonerating Weathermakers and Hall, there would have been no purpose in remanding to correct the trial judge's original error in dismissing the cross-claims because, upon remand, Jax Meat would still be faced with the binding effect of the jury verdict.
The fact that on Seaboard's appeal from the Warder judgment, which included a point raising the propriety of the directed verdict for Walker, this court affirmed without opinion does not mean that Seaboard was deprived of its right of appeal on this issue. Seaboard took its appeal from Warder's judgment rather than from the separate judgment for Walker. If Seaboard had a right to attack the directed verdict for Walker because of its potential binding effect in subsequent litigation, then it should have lodged its complaint in an appeal from the judgment entered in favor of Walker on the directed verdict.
The judgment in favor of Seaboard is reversed, and the case is remanded with directions to enter a judgment for Walker.
BOARDMAN and OTT, JJ., concur.
NOTES
[1] We regard Seaboard's suggestion that "on or about the track" modifies only the words "the person or property of any other person or corporation" as the least plausible of the several alternatives.
[2] The words "in good order and condition" are often used to describe the condition of goods at the time of shipment for purposes of determining responsibility for damages in transit. Annot., 33 A.L.R.2d 867 (1954).
[3] Apparently, the jury did not base its verdict on this count, because if it had, the amount of the verdict would be expected to equal the entire Warder judgment rather than half of it.
[4] See Wagner v. Detroit & Mackinac Railway Co., 50 Mich. App. 615, 213 N.W.2d 850 (1973), for a case involving similar facts where the court rejected the shipper's argument that the railroad's acceptance of the defectively loaded car constituted an independent intervening cause.
[5] The statute has now been amended to provide for the allocation of liability based upon degrees of fault. Sec. 768.31(3)(a), Fla. Stat. (1977).
[6] By inference, this provision suggests that a judgment exonerating one tortfeasor in a suit in which the second tortfeasor was not a party would not be binding on the second tortfeasor in his action for contribution. This would avoid the result looked upon with apprehension by the Minnesota court in Anderson v. Gabrielson, 267 Minn. 176, 126 N.W.2d 239 (1964). At least where both tortfeasors are parties to the same action, each of them would have the opportunity to try to participate in an adversarial manner in any determination which might lead to the exoneration of the other.
[7] Even though Sec. 768.31(4)(f) would not apply to Seaboard's claims under Counts II, III, and IV, the rationale of these two cases reflect another reason why a directed verdict for Walker should have been entered upon these counts. We are not impressed with Seaboard's argument that there was an insufficiency of identity of causes of action between the prior judgment for Walker and the breach of contract claim under Count II. Under Seaboard's theory, whether Walker breached its contract still depended upon a failure to load the railroad car in "good order and condition" which was equivalent to the negligence for which Walker had been exonerated in the Warder trial.
[8] With respect to the claim for contribution, the court noted that Jax Meat had no right to complain of the verdict in favor of Weathermakers and Hall because at that time there was no contribution among tortfeasors.