**James J. SIMON et al., Plaintiff,**

v.

**FARMLAND INDUSTRIES, INC. et al., Defendants.**

Civ. A. No. 78–1150.

United States District Court, D. Kansas.

Dec. 8, 1980.

Bryson Mills, Wichita, Kan., for plaintiff.

Jerry D. Bogle, of Gott, Hope, Young & Saffels, Wichita, Kan., for defendant Missouri-Kansas-Texas R. Co.

Robert L. Howard and William R. Sampson, of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant Farmland Industries, Inc.

## MEMORANDUM AND ORDER

KELLY, District Judge.

The above matter is now before the Court on the motion for summary judgment of defendant Missouri-Kansas-Texas Railroad on its cross-complaint against co-defendant Farmland Industries, Inc. These two defendants were sued by the plaintiff, James J. Simon, after he apparently suffered severe personal injuries while at a grain elevator owned by Farmland and served by M.K.T. The plaintiff, a truck driver not employed by either defendant, was injured when struck by a whiplashing heavy steel cable used by the Farmland elevator to move M.K.T.'s railroad cars. On the day of plaintiff's accident an M.K.T. train crew began moving railroad cars at Farmland's elevator while the cable was still attached to one, and the cable was stretched passed its breaking point. M.K.T. now seeks the Court's determination that a private track agreement between it and Farmland makes Farmland liable for all of the plaintiff's damages regardless of any negligence on M.K.T.'s part. The parties have submitted briefs and suggested findings, and the Court has had the benefit of their oral argument. After a careful analysis of the parties' side track agreement and the relevant law, the Court finds the agreement is inapplicable here, and consequently M.K.T.'s motion must be denied.

At issue in this case is the application of a 1924 private track agreement. Although Farmland was not a party to this contract, it is agreed that Farmland is governed by it here. Among other things, this contract provided M.K.T. would construct a side track. The agreement also provided the industrial user of the track, Farmland here, would keep the area above and to each side of the tracks clear and adopt rules for its safe operation:

### ARTICLE II.

Second Party [Farmland] will:

(c) Keep a space of six and one-half feet from the nearest rail of the tracks entirely clear of structures, material and obstruction of every sort, and not erect or permit the erection of any beam, pipe, wire structure or obstruction of any kind

over the tracks at a height of less than twenty-two feet, six inches above the top of the rails thereof;

(d) Adopt and enforce reasonable rules and regulations for the conduct of Second Party's agents and employees to protect them from injury while on the right of way of the tracks or the adjoining premises, and require such agents and employees to use proper signals or flags to notify First Party's employees when they are in or about any car on the tracks;

The agreement also contained the following clause which apparently requires Farmland to indemnify M.K.T. for any liability incurred by M.K.T. because of the negligent operation of the side track regardless of the railroad's negligence:

### ARTICLE VII.

In case of a breach of any of Second Party's obligations contained in Article II hereof, Second Party will indemnify and save harmless First Party from and against all liability for loss, damage, injury or death caused or contributed to thereby, regardless of railroad negligence.... Second Party also agrees to indemnify and hold harmless First Party for loss, damage, or injury from any act or omission of Second Party, Second Party's employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about said tracks, and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.

The steel cable causing the plaintiff's injuries was part of an apparatus used by Farmland to pull and thus position railroad grain cars over its unloading pit at its elevator. The cable was attached to a winch inside a small building to the side of the track. From the winch the cable extended towards the track and then curved around a large horizontal pulley close to the ground and track so that the cable then paralleled the track. To use the cable and winch an elevator man would fasten the cable by means of a hook on its end to a railroad car and then operate the winch. On the day of the accident an M.K.T. switch engine coupled with a grain car by Farmland's elevator while the cable was still attached. As the engine moved the grain car the cable became taut and finally snapped. As the cable recoiled from the release of tension, it struck the plaintiff.

Article VII above recites that Farmland must indemnify M.K.T., regardless of M.K.T.'s negligence, if any liability should be "caused or contributed to" by Farmland's failure to comply with either paragraphs (c) or (d) above in Article II. Farmland's cable was obviously within six and one-half feet of the track when the accident occurred, since it was attached to a railroad car on the track. Since the cable normally laid on the ground or was just off the ground when in use, only the lateral clearance restriction of six and one-half feet mentioned in paragraph (c) could apply. Consequently, the Court will first focus on the question of whether "structures, material and obstruction of every sort" should be interpreted here to include the cable as a matter of law. *See,* Williston on Contracts, Vol. 4, Sec. 616.

Contracts affecting the public's interest generally are liberally interpreted to favor the public. *United States v. Kansas Gas and Elec. Co.,* 215 F.Supp. 532, 542 (D.C. Kan., 1963). A contract attempting to exempt a party from his own negligence must contain language making this intention clear and unambiguous. *Butters v. Consolidated Transfer and Warehouse Co.,* 212 Kan. 284, 289–90, 510 P.2d 1269 (1973). Such a contract is also strictly construed against the party relying on it. *Hunter v. American Rentals, Inc.,* 189 Kan. 615, 617, 371 P.2d 131 (1962).

The character of the cable and winch apparatus is crucial here. If it is the type of structure, material or obstruction intended by the contract, then paragraph (c) of the contract was clearly breached and M.K.T. is entitled to indemnification. Whether the parties' indemnity agreement applies to the case at hand involves inter-

preting the agreement and ascertaining the parties' intent, both functions of the Court. Williston on Contracts, sec. 601. In doing so the Court may examine the surrounding circumstances, the purposes and objects of the contract as well as the language of the contract itself. *Bartlett v. Davis Corp.*, 219 Kan. 148, 157, 547 P.2d 800 (1976).

The clearance requirements contained in Article II, paragraph (c) of the agreement are ostensibly there for the protection of the M.K.T.'s employees and also any third parties near the tracks. There are numerous reported cases involving such clearance requirements and injuries to railroad employees. *See, e. g., Missouri Pac. Rail. Co. v. Arkansas Oak Flooring Co.*, 434 F.2d 575 (8th Cir., 1970); *Ratigan v. New York Central Rail. Co.*, 291 F.2d 548 (2nd Cir., 1961); *Booth-Kelly Lumber Co. v. Southern Pac. Co.*, 183 F.2d 902 (9th Cir., 1950); *Deep Vein Coal Co. v. Chicago & E. I. Ry. Co.*, 71 F.2d 963 (7th Cir., 1934); *Norfolk and Western Rail. Co. v. Hardinger Transfer Co., Inc.*, 415 F.Supp. 507 (W.D.Pa., 1976); *Pyzynski v. Pennsylvania Cent. Trans. Co.*, 438 F.Supp. 1044 (W.D.N.Y., 1977); *Pennsylvania Rail. Co. v. M.K.W. Corp.*, 301 F.Supp. 991). (N.D.Ohio, E.D.1969).

A quick scan of the above cases would lead one to the initial conclusion that any object within the clearance restriction of six and one-half feet in the present case, would amount to a violation of the agreement. However, given the undisputed facts in the case at hand, the Court finds a literal application of the language in paragraph (c) would be inappropriate. Farmland's daily use of the cable/winch system to move railroad cars by its elevator was standard operating procedure. In a general sense, the cable/winch system was a tool and an integral part of Farmland's elevator. Since it was a tool and integral part of the grain elevator's operation the Court cannot adopt M.K.T.'s interpretations of the contract— that the cable/winch system was a structure, material or obstruction and thus a breach of the lateral clearance requirement. Rather, the Court finds a liberal, not a literal, interpretation of the Article II, paragraph (c) is appropriate given the facts presented here.

In an old but relevant case decided by the Kansas Supreme Court, *Palomino v. Atchison, Topeka and Santa Fe Rail. Co.*, 91 Kan. 556, 138 P. 616 (1914), tools were determined not to be "obstructions" in violation of railway clearance restrictions. The plaintiff was a railroad employee who sued his employer for injuries sustained at work. He based his claim on the Kansas Employers Liability Act which prohibited any "insufficiency of clearance of obstructions". The plaintiff injured his hand while loading steel rails because of one rail projecting out from the flatcar on which the rails were being loaded. In finding for the railroad the Supreme Court declined to apply a literal definition of "obstruction":

> In a sense, every tool or instrument used by an employee and every article or thing handled by him on or about railroad premises is an obstruction, but it is clear that these things were not within the legislative purpose in the enactment under consideration. In railroad parlance "clearance of obstructions" means the removal of impediments that would interfere with the passage of engines, cars and trains or the safety of those performing duty on or near vehicles moving on or over the rails of a railroad.

As in *Palomino* the cable/winch system was a tool and not the type of impediment which generally "would interfere with the passage of ... trains or the safety of those" working near the sidetrack.

The cases cited by M.K.T. involving similar sidetrack agreements are distinguishable from the case at hand in that none involve such a permanently installed tool so essential to the industry's use of the sidetrack. *Gollick v. New York Cent. Rail. Co.*, 138 F.Supp. 384, (E.D.Mich., S.D.1956) involved a vertical "I" beam between the two sets of tracks running into the industry's plant. The "I" beam was part of the railroad door to the plant and could be unhooked and slid outside the clearance area. Thus unlike the case at hand, the "I" beam was merely a removable part of the indus-

try's door and not an essential and permanently placed tool.

Other cases cited by M.K.T. may likewise be distinguished. Some of these cases merely involved the accumulation of foreign material on or near the tracks: ashes in *Pyzynski v. Pennsylvania Cent. Trans. Co.*, 438 F.Supp. 1044 (D.C.N.Y., W.D., 1977); a bale of pulp in *Baker v. Kimberly-Clark Corp.*, 364 F.Supp. 63 (S.D.Ohio, W.D., 1973); and fertilizer in *Atchison, Topeka and Santa Fe Rail. Co. v. Smith*, 563 S.W.2d 660 (Civ.App.Tx., 1978). Another case cited by M.K.T. involved a movable object left too close to the sidetrack: a movable iron trash box in *Minneapolis-Moline Co. v. Chicago, Milwaukee, St. Paul and Pac. Rail. Co.*, 199 F.2d 725 (8th Cir., 1952). The remaining cases proffered by M.K.T. in support of its motion present situations where there truly were obstructions: a large immovable iron box six inches from the railcar in *Colorado Mill. and Elev. Co. v. Chicago, R. I. and Pac. Rail. Co.*, 382 F.2d 834 (10th Cir., 1967); and buildings or sheds too close to the tracks in *Miller and Co. of Birmingham, Inc. v. Louisville and Nashville Rail. Co.*, 328 F.2d 73 (5th Cir., 1964) and *Lehigh Valley R. R. Co. v. American Smelting and Refin. Co.*, 256 F.Supp. 534 (E.D.Pa., 1966).

Consequently, the Court finds no breach by Farmland of the clearance requirements in Article II, paragraph (c). Nor do we find a breach of the requirement in paragraph (d) that Farmland have rules to protect its employees while on the sidetrack. Regardless of whether Farmland had adopted and enforced such rules, paragraph (d) specifically states these rules are for the protection of Farmland's employees. Since the plaintiff was not a Farmland employee, paragraph (d) is irrelevant.

In conclusion, none of the obligations set forth in Article II of the private track agreement were breached by Farmland when the plaintiff was injured. Since Article II was not breached, Article VII of the agreement applies. The last sentence of Article VII provides that both M.K.T. and Farmland shall equally bear any concurring negligence. Whether such concurring negligence caused plaintiff's injuries shall be determined at trial.

For the above reasons the summary judgment motion of M.K.T. on its cross-complaint against Farmland is denied, and M.K.T. shall remain as a litigant in this case.

Furthermore, Farmland's motion seeking certification of the indemnity issue discussed above to the Kansas Supreme Court must necessarily be denied.

IT IS SO ORDERED.