**Ralph E. GAINES, Plaintiff,**

**v.**

**ILLINOIS CENTRAL RAILROAD COMPANY, a corporation; Archer Daniels Midland Company, a corporation; Tabor Grain Company, a corporation; and Pacific Grain Company, a corporation, Defendants.**

**ILLINOIS CENTRAL RAILROAD COMPANY, Third–Party Plaintiff,**

**v.**

**TABOR GRAIN COMPANY, Third–Party Defendant.**

**No. 91 C 1767.**

United States District Court, N.D. Illinois, E.D.

May 27, 1992.

Robert Earl Harrington, Jr., Patrick Joseph Harrington, Harrington & Harrington, Chicago, Ill., for Ralph E. Gaines.

Thomas J. Healey, William T. Weaver, Lord, Bissell & Brook, Chicago, Ill., for Illinois Cent. R. Co.

Gregory William Beihl, John Joseph O'Malley, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, Ill., for Archer Daniels Midland Co. and Pacific Grain Co.

**MEMORANDUM OPINION AND ORDER**

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Ralph Gaines ("Gaines") allegedly was injured while working as an em-

ployee for defendant Illinois Central Railroad Company (the "IC"). Gaines filed a two-count amended complaint, alleging in count I that his injuries resulted from the negligence of the IC, and in count II, that the negligence of defendants Archer Daniels Midland Company ("ADM"), Tabor Grain Company ("Tabor Grain"), and Pacific Grain Company ("Pacific Grain") caused his injuries. Plaintiff alleges that ADM, Tabor Grain, and Pacific Grain owned and operated the grain plant where the accident occurred. By its order of January 21, 1992, the Court, without objection from plaintiff, granted summary judgment in favor of ADM on count II. The IC subsequently filed a third-party complaint against Pacific Grain. Tabor Grain answered this complaint as the successor in interest to Pacific Grain. Pursuant to Fed.R.Civ.P. 56, Tabor Grain now moves for summary judgment on count I of the IC's amended third-party complaint. For the reasons set forth below, the Court grants Tabor Grain's motion.

## II. FACTS

At the time of the accident alleged in the amended complaint, plaintiff was employed by the IC as a brakeman. On December 7, 1989, plaintiff alleges that he suffered injuries when he was thrown from the train on which he was riding to the roadbed adjacent to the track. The accident is alleged to have resulted from the emergency application of the train's air brakes, which occurred after plaintiff had signaled that the train was approaching a grade crossing where the rails of the track had been covered with asphalt. When three of the train's cars continued through that crossing, the asphalt caused the cars to derail from the track. (*See* Defendant Tabor Grain's Rule 12(m) Statement of Uncontested Facts ("Tabor Grain's 12(m) Statement") ¶ 12.) [1] Plaintiff alleges that through the negligence of one or both of the remaining defendants, the train had mistakenly entered a passing track owned by the IC, rather than the sidetrack leading to the Pacific Grain plant. It was on this passing track that the train encountered the paved-over road crossing.

Count I of the IC's amended third-party complaint seeks indemnity from defendant Pacific Grain for any potential liability to plaintiff. The IC alleges that Pacific Grain, through an agent, negligently directed and controlled the IC train because Pacific Grain's agent purportedly provided inaccurate information about the track layout, thereby causing the train to proceed upon the wrong track. (Amended Third–Party Complaint, Count I, ¶ 6.) The IC's claim for indemnity is based upon two identical sidetrack agreements executed by the IC and Pacific Grain in 1961 and 1966 respectfully (the "sidetrack agreements"). Paragraph 4 of both agreements provides in pertinent part that

[t]he Shipper also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Shipper, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, *while on or about the Track*. If any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

(January 13, 1966 Sidetrack Agreement, Amended Third–Party Complaint at Ex. C ¶ 4; July 27, 1961 Sidetrack Agreement,

---

**1.** The facts material to Tabor Grain's motion for summary judgment are taken in large measure from Tabor Grain's 12(m) Statement. The IC failed to respond to Tabor Grain's statement as it was required to do pursuant to General Rule 12(n) of the rules of this Court. Rule 12(n) requires the party opposing a motion for summary judgment to submit a response to each numbered paragraph in the moving party's Rule 12(m) statement and to include a statement of any additional facts that require the denial of summary judgment. That rule further provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Because the IC failed to file a statement pursuant to Rule 12(n), the Court accepts as true those assertions of fact in Tabor Grain's Rule 12(m) statement. *See Herhold v. City of Chicago*, 723 F.Supp. 20, 22 n. 1 (N.D.Ill.1989) (Rovner, J.).

Amended Third–Party Complaint at Ex. D ¶ 4 (emphasis added).) Pursuant to this provision, the IC maintains that it is entitled to indemnify from Pacific Grain for all or one-half of its potential liability to plaintiff.

Both the 1961 and 1966 sidetrack agreements apply to specific sidetracks located on property owned by Pacific Grain (now by Tabor Grain) in Farmer City, Illinois.[2] (*See* Tabor Grain's 12(m) Statement ¶ 10.) The sidetrack agreements include highlighted plats which define the portions of the track serving the premises of Tabor Grain. (1961 Sidetrack Agreement at 1; 1966 Sidetrack Agreement at 1; *see also* Tabor Grain's 12(m) Statement ¶ 13.) At the time of plaintiff's accident, the IC train was not on one of the highlighted tracks, but was instead on a track owned by the IC or some other entity. (Tabor Grain's 12(m) Statement ¶¶ 11, 14.) Thus, Tabor Grain maintains that the derailment of a portion of the train did not occur on the "track," as that term is used in the sidetrack agreements. (*Id.* at ¶ 14.) The IC maintains, however, that although the accident did not occur on one of the sidetracks highlighted in the diagrams attached to the parties' agreements, it did take place "on or about" the sidetracks covered by the agreements. Consequently, the IC argues that Tabor Grain must indemnify it for any damages ultimately recovered by plaintiff in the underlying lawsuit.

## III. ANALYSIS

On a motion for summary judgment, the moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991); Fed.R.Civ.P. 56(c). The Court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-movant, and where there are doubts as to whether a genuine factual dispute exists, the Court must resolve those doubts in favor of the non-moving party. *Griffin*, 929 F.2d at 1212; *see also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1477 (7th Cir.1990). Because the IC has failed to file a statement pursuant to Local Rule 12(n) which responds to the assertions of fact set forth in Tabor Grain's 12(m) Statement, the facts relevant to Tabor Grain's motion are undisputed. Accordingly, the Court's task is to interpret the indemnity provision of the sidetrack agreements in light of those undisputed facts. *See Rogers v. Chicago & North Western Transportation Co.*, 947 F.2d 837, 840 (7th Cir.1991).

■ Tabor Grain maintains that the indemnity provision of the sidetrack agreements is unambiguous—it only is required to indemnify the IC for injuries incurred "on or about" the highlighted sidetracks. According to Tabor Grain, because the train on which plaintiff was riding was not progressing along one of those tracks, plaintiff's injury was not incurred while "on or about" the sidetracks covered by the agreements. Accordingly, Tabor Grain maintains that it has no obligation to indemnify the IC for plaintiff's alleged injuries. The IC, on the other hand, argues that even if the train was not located on one of the highlighted sidetracks, any injuries sustained by Gaines were incurred "on or about" those sidetracks. According to the IC, Tabor Grain has advanced an interpretation of the indemnity provision requiring that the loss, damage, or injury be suffered *on* the sidetrack, rather than "on or about" that track as required by the agreements.

Although the indemnity provision in the instant sidetrack agreements is commonly utilized by railroad companies in relation to sidetracks constructed to service their customers, there is scant authority on the proper interpretation of the phrase "on or about the Track," as used in such a provision. In its motion for summary judgment, Tabor Grain relies solely on the decision of a Florida appellate court in *Sol Walker &*

---

**2.** For ease of reference, the Court will hereinafter refer only to Tabor Grain as the successor in interest to Pacific Grain.

*Co. v. Seaboard Coast Line Railroad Co.,* 362 So.2d 45 (Fla. Dist. Ct.App.1978). There, the court considered an indemnity provision virtually identical to that at issue here, but under circumstances that were vastly different. Sol Walker & Company ("Walker") was a scrap iron dealer that maintained sidetracks on its property connected to the main line of the plaintiff railroad. *Id.* at 47. On a daily basis, the railroad would deliver open gondola cars to Walker's scrap iron yard. Walker would then load the cars with scrap iron, and the railroad would pick up and transport the cars to their destinations. The injury at issue, which occurred when a bale of scrap iron fell from a car and injured a railroad switchman, took place after the loaded cars had been transported, a day later, to two other rail yards. *Id.* at 48. After the employee obtained a judgment against the railroad, the railroad invoked its indemnity agreement with Walker. The Florida court concluded that the indemnity provision did not apply because the accident occurred at a location that was not "on or about the track" referenced in the indemnity agreement. *Id.* at 49. To reach this conclusion, the court was required to analyze whether the phrase "on or about the track" in the indemnity provision modified the words "any act or omission of the Shipper," in which case the indemnity provision would apply despite the fact that the accident occurred at another location, or the words "loss, damage, or injury," in which case the provision would not apply because the injury had been suffered several miles from the track referenced in the agreement. *Id.* at 49. The court found that either construction of the provision was logical but construed the provision against its drafter and strictly in favor of the indemnitor. *Id.*[3] Accordingly, the court found that the indemnity provision was inapplicable to the circumstances of that case. *Id.*

The decision in *Sol Walker* does not provide persuasive authority for Tabor Grain's position in the instant case, however. An accident which occurs miles from a sidetrack referenced in an indemnity provision cannot be equated to an accident which takes place on an adjacent track. In *Sol Walker,* there could be no question that the injury did not occur "on or about" the track covered by the sidetrack agreement. In the instant case, resolution of that question is not nearly so clear.

In response to Tabor Grain's motion, the IC contends that many courts have invoked similar indemnity provisions even where the accident at issue did not occur on the track referenced in the agreement. The cases relied upon by the IC, however, also are factually distinguishable from the instant case. First, the IC maintains that its position is supported by the decision of the Wisconsin Supreme Court in *Huck v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.,* 5 Wis.2d 124, 92 N.W.2d 349 (Wis. 1958). There, the plaintiff had been injured at a location approximately fifty to sixty-five feet from the switch track of the indemnitor Doughboy Industries, Inc. ("Doughboy"). Doughboy's switch track had been built at an incline and ran from the Doughboy plant down to the track scale owned by the railroad. At the time of the accident, the plaintiff was standing on top of an empty freight car situated on the railroad's track scale. He was injured when a loaded car from the Doughboy plant descended the switch track and collided with the freight car, throwing plaintiff to the track. *Id.* at 126, 92 N.W.2d at 350–51. The Wisconsin Supreme Court determined that the injury occurred "on or about the track" even though the plaintiff was as far as sixty-five feet from Doughboy's switch track at the time of his injury. *Id.* at 128, 92 N.W.2d at 351. The Wisconsin court emphasized that the plaintiff was "on the immediate continuation" of the Doughboy track "in the direct line of travel of cars moving downhill on 'said track.'"

---

**3.** In the instant case, the IC does not take the position that the phrase "on or about the Track" modifies the words "any act or omission of the Shipper." Instead, the IC argues only that plaintiff's alleged injuries were sustained "on or about" the highlighted tracks. (*See* IC's Response in Opposition to Tabor Grain's Motion for Summary Judgment on Count I of the Amended Third–Party Complaint ¶ 4.) Accordingly, the Court need not address the alternative interpretation of the indemnity provision considered by the court in *Sol Walker.*

*Id.* at 129, 92 N.W.2d at 352. As a result, the court found that the plaintiff "was in the clear and easily-to-be-foreseen field of peril" from the movement of cars on the Doughboy track." *Id.*[4]

The Court agrees with Tabor Grain that the decision in *Huck* can be distinguished from the instant case. In determining to apply the indemnity provision in *Huck,* the Wisconsin court thought it significant that the car which caused the injury had begun its descent from the Doughboy switch track. Moreover, the court emphasized that the railroad's track scale was in the clear and foreseeable field of peril from movement of cars on the Doughboy track because it was located at the bottom of the switch track's incline. *Id.* Thus, the court found that the track scale was encompassed in the term "on or about" the switch track. *See also DeWitt v. Western Pacific Railroad Co.,* 719 F.2d 1448, 1452 (9th Cir.1983) (negligent act which proximately caused collision took place on track covered by the indemnity agreement although collision itself occurred elsewhere). In the instant case, however, the IC train from which Gaines was thrown had never entered the Tabor Grain sidetrack. Instead, the train had mistakenly passed that track and had proceeded down an adjacent track owned by the railroad. The Tabor Grain sidetrack, therefore, had no relation to plaintiff's injury, other than that those controlling the train apparently had intended to proceed on the sidetrack, rather than on the track where the injury ultimately had occurred. Under these circumstances, this Court doubts that the location of the accident was "within the obvious field of peril from readily foreseeable movement of cars" on the Tabor Grain sidetrack. *See Huck* 5 Wis.2d at 129, 92 N.W.2d at 352.[5]

Other of the cases relied upon by the IC can be distinguished on similar grounds. For example, in *Simon v. Farmland Industries, Inc.,* 505 F.Supp. 59, 60 (D. Kan. 1980), the plaintiff was injured by a steel cable used by the defendant grain elevator to move railroad cars along its sidetrack. It was being utilized for that purpose when the plaintiff's injury occurred. Thus, *Simon* is far removed from the circumstances of the present case.[6] Similarly, in *Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co.,* 302 F.2d 843, 846 (3d Cir.1962), a railroad brakeman was crushed to death between a train and a wall located on the customer's property. In that case as well, the train was proceeding on the

---

4. In reaching this conclusion, the Wisconsin Supreme Court endeavored to construe the indemnity provision in a manner consistent with its dominant purpose. The court explained that

the occurrence of the indemnity agreement in a contract for the construction of new trackage by the railroad for Doughboy, on Doughboy's land, on which trackage cars would be moved about by Doughboy without any control or supervision by the railroad, make it probable that the indemnity agreement was inserted to protect the railroad from liability resulting from ordinary activities of Doughboy in the use of the new track. This purpose would be defeated in many readily-conceivable cases that might arise, if the indemnity were to be limited to accidents occurring while the injured person or property was on the new track or within arms-length or a few feet of it. To effectuate fully the probable purpose of the indemnity paragraph, and avoid crippling it with arbitrary limitations having little relation to such purpose, the words 'about said track,' if applicable to the injured person, must be construed as extending to the obvious field of peril from readily foreseeable movement of cars on "said track."

*Id.* at 128–29, 92 N.W.2d at 352; *see also Liberty Mutual Insurance Company v. Adams,* 91 Idaho 151, 417 P.2d 417, 423–24 (Idaho 1966) (quoting with approval a portion of the above language from *Huck*).

5. The Court's interpretation of *Huck* is buttressed by the fact that the Wisconsin court itself limited its decision to the particular facts presented there. The court stated that

[w]e are not saying that everyone within 65 feet or even five feet of the new or relocated switch track is "about said track" within the meaning of the indemnity agreement. We go no further than to hold that Huck was "about said track" in the circumstances presented to us by the record on this appeal, for the reasons stated.

*Id.*

6. Moreover, the court in *Simon* did not even address whether the plaintiff's injury was suffered "on or about" the designated sidetrack. Instead, the issue was whether the winch and cable were encompassed in the phrase "structures, material and obstruction of every sort" in the parties' private track agreement. *Id.* at 61.

customer's sidetrack when the accident occurred.

The IC also relies on a line of cases in which the indemnity provisions were much more broad than that at issue in this case. In *Seymour v. Chicago and Northwestern Railway Co.*, 255 Iowa 780, 124 N.W.2d 157, 159 (1963), for example, the agreement provided indemnification for any loss, damage, or injury "arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal" of the customer's facility. The Iowa Supreme Court determined that this provision covered an accident which occurred at an intersection off the customer's property. The accident presumably had been caused because railroad cars situated on a passing track had blocked the driver's view, resulting in a collision between his car and a moving train. Noting that the phrase "in connection with" should be broadly construed, the court held that because the railroad cars had been placed on the passing track to be unloaded by the defendant at its facility, the incident arose "in connection with" the operation and use of the facility and was therefore covered by the indemnity provision. *Id.* at 160.

Similarly, in *Chicago and North Western Transportation Co. v. V & R Sawmill, Inc.*, 501 F.Supp. 278, 280 (D.S.D. 1980), an employee of the defendant was injured while operating a front-end loader a short distance from the area covered by a lease and licensing agreement. The lease agreement provided for indemnification by the lessee for any injury suffered "while on or about the leased premises," and a separate license agreement extended the indemnification obligation to injuries incurred "in connection with" the use or operation of the licensed facility. *Id.* at 279–80. The court held that the license agreement clearly applied in these circumstances because the work the plaintiff had been performing clearly had arisen "in connection with the operation of the licensed facility." *Id.* at 281. With respect to the more narrow language in the lease agreement, the court cited to a number of decisions where courts had limited the reach of the phrase "on or

about" to the area specifically covered by a particular agreement, noting that it did not quarrel with those decisions. *Id.* at 280. However, the court then concluded, without further explanation, that "the indemnification clause contained in the lease agreement was intended to apply to incidents occurring as a direct result of the operation of the chip loading facility, even though such occurrence happened outside the confines of the leased premises." *Id.*

■ Despite the alternative holding of the court in *V & R Sawmill*, this Court concludes that the phrase "on or about" a designated sidetrack is much more narrow than a clause requiring indemnification for any loss or injury incurred "in connection with" the operation or use of a designated facility. The "in connection with" language imposes no physical limitation on the location of the injury and presumably could be triggered even where the injury is incurred a substantial distance from the facility, for even in that situation, the injury could broadly relate to the operation or use of the specified facility. The "on or about" language contained in the instant agreement, however, plainly imposes a physical limitation on the location of the injury. The loss or injury need not have been incurred *on* the Tabor Grain sidetracks (*see, e.g., Baker v. Northeastern Industrial Park, Inc.*, 73 A.D.2d 753, 423 N.Y.S.2d 308, 311–12 (1979)), but it must bear some relationship to one of those tracks in addition to its relationship to the operation or use of the facility in general. Had the parties chosen to do so, they could have agreed to a provision providing indemnity for any injury suffered in connection with the use or operation of the Tabor Grain facility. Such a provision may have encompassed the injury alleged by Gaines here. But the parties did not agree to such a broad indemnity provision. Instead, Tabor Grain agreed to provide indemnification only for injuries occurring "on or about" designated sidetracks. Under that provision, there must be a relationship between the injury and one of the sidetracks referenced in the agreements before the indem-

nity provision may be invoked. That necessary relationship is lacking here.

As the Wisconsin Supreme Court held in *Huck,* the phrase "on or about" extends to "the obvious field of peril from readily foreseeable movement of cars" on the designated track. *Huck,* 5 Wis.2d at 129, 92 N.W.2d at 352. The train from which plaintiff was thrown was never on the sidetrack covered by the parties' agreements and, therefore, it never moved on that track. The Tabor Grain sidetrack bore no relation to plaintiff's accident other than that the IC train had presumably intended to switch to that sidetrack instead of proceeding down the adjacent IC track. This Court holds that the adjacent IC track was not within the obvious field of peril from the movement of the railroad's cars on the Tabor Grain sidetracks. Any relationship between plaintiff's injury and the Tabor Grain sidetracks is too tenuous for invocation of Tabor Grain's indemnity obligation. The term "on or about the Track" as used in the indemnity provisions of the sidetrack agreements cannot be expanded to encompass an accident occurring on or about an adjacent track not covered by the agreements. *Cf. Barilaro v. Consolidated Rail Corp.,* 876 F.2d 260, 261 (1st Cir.1989) (sidetrack agreement specifically applies to sidetrack owned by railroad and sidetrack owned by railroad's customer, but not to the railroad's lead tracks); *Atlantic Coast Line R. Co. v. Robertson,* 214 F.2d 746, 752 (4th Cir.1954) (indemnity agreement applied to all fifteen tracks within customer's facility, not only to certain loading and unloading tracks as suggested by the indemnitor). The Court concludes that plaintiff was not injured "while on or about the Track" as

that phrase is used in the sidetrack agreements. Accordingly, the indemnity provision of those agreements has no application to the instant case.[7]

## IV. CONCLUSION

For the foregoing reasons, Tabor Grain's motion for summary judgment on count I of the IC's amended third-party complaint is granted. Judgment is entered in favor of Tabor Grain on that count. The parties are directed to appear at a status hearing on June 4, 1992 at 9:30 a.m.

---

7. The Court believes that its construction of the parties' agreements is consistent with the dominant purpose of the indemnity provision. The sidetracks at issue here were built by the IC for the benefit of Tabor Grain. In exchange for the services provided by the railroad in connection with those sidetracks, the railroad obtained an indemnification agreement to protect itself against any loss or injury relating to the operation of its trains on those sidetracks. *See Barilaro,* 876 F.2d at 265; *Huck,* 5 Wis.2d at 128–29, 92 N.W.2d at 352. The IC would argue that the injury alleged by plaintiff does relate broadly to the Tabor Grain sidetracks, thereby bringing the injury within the scope of the parties' agreement, because the train had intended to proceed on those sidetracks toward the Tabor Grain facility. However, the language utilized by the parties in the indemnity provision imposes limitations on the scope of Tabor Grain's indemnity obligations. For example, Tabor Grain cannot be held responsible for any accident involving an IC train while en route to its facility. Although the accident here may have borne some relationship to the operations of Tabor Grain's facility, the Court concludes that the injury alleged is beyond the scope of Tabor Grain's indemnity obligations.